## WIER v. STILL.

Divorce: FRAUD: FALSE REPRESENTATIONS AS TO CHARACTER, ETC. False representations of a party as to his character, social standing or fortune do not constitute such fraud on the opposite party as to avoid a marriage induced thereby.

*Appeal from Jefferson District Court.*

SATURDAY, JANUARY 28.

IN CHANCERY. Plaintiff in this action asks that a marriage celebrated between herself and defendant may be

declared void, and be annulled by proper decree, on account of fraud practiced by defendant upon her in procuring her consent to become his wife. Upon the trial in the district court the facts found by the judge to whom the cause was submitted are set out in the record in the following words: "Be it remembered that, on the trial of this cause, the following facts were proved: that on Sunday, about the last of July, 1869, defendant, then a stranger to plaintiff, came to plaintiff's house, in Libertyville, Jefferson county, Iowa, where she had been residing and keeping house for herself and one child for about eight or nine years; that he represented to plaintiff that he had been referred and recommended to plaintiff by her acquaintances and friends; that after conversing some time he proposed to make further visits to plaintiff, saying she had been recommended to him as a suitable person for a wife, and that plaintiff told defendant that she could not consent to have him visit her, as he was an entire stranger (she had learned his name at that time but never saw him before). He said to her that he was a man of good character and good standing in society, and that he had many respectable relations and connections, and that he could give her any reference she might desire. In a day or two he called again and made the same representations as to being a man of good moral character and of good standing in society, and that she need have no fears as to being imposed on by him; that he had plenty of means, and could and would maintain her and educate her child well, and proposed that he should get the license for the marriage. Plaintiff objected that she did not know him, and that she could not or would not consent unless she counseled with her mother. On Thursday, the 4th day of August, 1869, he came to plaintiff's house with buggy and team, and a license to marry plaintiff, and plaintiff accompanied defendant to her mother's house, still not having given her consent; and that while at her mother's the defendant made

the same representations as to his being a man of good character, and that plaintiff believed, from his representations, that he was a man of good standing and good character; that a justice of the peace was sent for and the marriage ceremony performed; that the parties started to the residence of plaintiff, and that plaintiff felt badly about the transaction, and on reaching home told defendant to leave; that he left, and that in a day or two he returned. In the mean time, plaintiff having learned something of his true character, she refused him admittance to her house; that the parties never lived or cohabited together at all; and that defendant was a convict of the penitentiary and had served three terms in the penitentiary of Iowa, and had been released from serving but a short time before this marriage took place, all of which was unknown to plaintiff at the time."

Upon these facts, the court dismissed plaintiff's petition, and from this decision she appeals.

*D. P. Stubbs* for the appellant.

No appearance for the appellee.

BECK, J. — We may concede that plaintiff was induced to enter into the marriage relation with defendant by his false representation as to his character and social standing. While the case exhibits falsehood and deception on his part, it displays on her part folly and inconsiderate haste in entering a relation that should be assumed with caution and upon the exercise of reason, based upon knowledge of the character and qualities of the one chosen as a companion for life. Such hasty and ill-advised marriages, as in this case, often result to the injury of one or both parties. The remedy for the evils growing out of marriages of this character, so far as society is concerned, is not facility in their dissolution. If they are readily annulled

by the law it will prove an inducement for their frequent occurrence. While in this case it might be desirable to relieve plaintiff from the consequences of her folly, if it cannot be done except by the violation of rules of law and the recognition of doctrines that will operate prejudicially upon society, she must endure the hardship her hasty and foolish action has brought upon her.

The dissolution of the marriage in this case is claimed, not under the statute regulating divorces, but upon the ground that it was procured by fraud of defendant. We are not prepared to deny that in certain cases, not expressly provided for in the statute, courts may declare void the marriage contract. This contract rests upon the consent of the parties thereto; if one of them was legally incapable of consenting, or by the exercise of force or fraud the marriage was celebrated without his or her consent, it is void and may be so declared by a court of chancery. But the force or fraud must be extreme and clearly established. Such a case would occur where the man or woman by duress was compelled to enter into the marriage relation, or where one of the parties falsely personated another with whom the innocent party supposed he or she was entering into wedlock. Mere false representations by one of the parties as to his fortune, character or social standing, will not avoid the marriage. If they should be so held where would courts fix the limits of invalid marriages? It would open a field for judicial investigation at once extensive and most detrimental to society. A man consents to a marriage because the woman induces him to believe she has an ample fortune; a woman consents to become a wife because the man falsely represents that he is of respectable social standing. If these representations prove false shall the marriages induced by them be declared void? If so, to what extent must they be proved false? If the woman represents she has a fortune of $100,000, upon the faith of which the man consents to the marriage, when, in fact,

Wier v. Still.

it is but $10,000, or if the man represents that he is of good social character and thereby wins the hand of the woman, when, in truth, he is not admitted into good society, will the courts in either case dissolve the marriage? These thoughts suggest the dangerous tendencies of the doctrines advocated by plaintiff's counsel, and the impossibility of their recognition by the courts.

The following language of Chancellor KENT expresses the true doctrine upon this subject: " It is said that error will, in some cases, destroy a marriage and render the contract void, as if one person be substituted for another. This, however, would be a case of palpable fraud, going to the substance of the contract; and it would be difficult to state a case in which error simply, and without any other ingredient, as to the parties or one of them, in respect to the other, would vacate the contract. It is well understood that error, and even disingenuous representations, in respect to the qualities of one of the contracting parties, as to condition, rank, fortune, manners and character, would be insufficient. The law makes no provision for the relief of a blind credulity, however it may have been produced." 2 Kent's Com. 77.

In our opinion the ruling of the district court in dismissing plaintiff's petition was correct.

Affirmed.