HENRY W. SAFFORD *vs.* MARGARET V. SAFFORD.

Norfolk.   March 6, 1916. — June 20, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Marriage and Divorce,* Annulment of marriage.

Where a young man eighteen years and nine months of age married a woman twenty-one years of age after he frequently had had sexual intercourse with her during a period of about five months, after he had known for at least three months that she was pregnant and after his parents had told him not to marry her "but to wait and that time would tell whether or not he was the father of" her child, he cannot maintain a libel under R. L. c. 151, § 11, to annul the marriage on proving that his wife was pregnant by another man two months before he met her for the first time and that she induced him to believe that he was the only man who ever had had intercourse with her and that he was responsible for her condition; because it is plain that after the warning from his parents he was content to rely without investigation on the representations of the woman that he married.

CROSBY, J.   This is a libel brought in behalf of a minor by his next friend, his father, to annul his marriage with the libellee on the ground of fraud.  R. L. c. 151, § 11.  The case comes before this court upon a report made by a judge of the Superior Court * who ruled that upon the evidence the libel could not be maintained, and ordered it dismissed.

The material facts are not in dispute.  The parties were married on December 20, 1913.  At that time the libellant was about eighteen years and nine months old and the libellee was twenty-one years old.  At the date of the marriage, the libellee was pregnant with a child begotten by a man other than the libellant during the last week in May, 1913.  The parties became acquainted about July 10, 1913, and four or five days afterwards the libellant had sexual intercourse with the libellee; and from that time until within a few days before February 8, 1914, when the libellee's child was born, they frequently had sexual intercourse with each other.  The libellee several times falsely represented to the libellant that he was the only man who ever had intercourse with her and that he was responsible for her condition.

---

* *Keating, J.*

She threatened him that she would commit suicide unless he married her, and although all these representations were false he believed them to be true, and without attempting to ascertain whether such representations were true or false, entered into the contract of marriage with her. The libellant never had sexual intercourse with any woman before having intercourse with the libellee in July, 1913. It also appears from the report that "his parents told the libellant not to marry the libellee but to wait and that time would tell whether or not he was the father of the libellee's child, but he did not know at that time that the date of the child's birth and its physical condition at its birth would indicate when the child had been begotten, and these facts were not explained to him."

It is well settled in this Commonwealth that the unchastity of a woman before the execution of the contract of marriage is not an impediment to a valid marriage. In order to avoid the contract and justify a decree of nullity, the fraud and deception must relate to facts essential to the very existence of the marriage relation. *Reynolds* v. *Reynolds*, 3 Allen, 605. It also has been decided by this court that a contract of marriage will not be set aside upon an application by a husband upon the ground of fraud, where it appears that he relied solely upon statements of the libellee and took no steps to determine their truth or falsity. "If it appears that he had the means of ascertaining the falsity of the statements made to him, or that the nature of the transaction and the circumstances attending it were such as to put a reasonable person on inquiry, the presumption of deceit arising from proof of the fraud will be repelled and the party will be left to bear the consequences of his own want of due diligence and caution. A party cannot escape from obligations which he has voluntarily assumed, on the ground that he has been deceived and defrauded, if he neglects to avail himself of means of information within his reach, or if he places a blind or wilful confidence in representations which were not calculated to deceive a man of ordinary prudence and circumspection, for although he may have been in point of fact deceived and imposed upon, yet it is a consequence or result of his own folly or neglect." *Foss* v. *Foss*, 12 Allen, 26.

The application of the principles stated to the case at bar is decisive against the maintenance of the libel. The counsel for the

libellant contends that the record shows that the libellant, by reason of youth, inexperience and ignorance "of the laws of nature governing reproductive functions of the human species, particularly as to the normal period of gestation," was not "a reasonable person" or "a man of ordinary prudence and circumspection" in such matters or capable of the exercise of a proper and reasonable prudence and discretion within the rule as stated in *Foss* v. *Foss, supra.* We are unable to agree with this contention.

It appears that for a period of about five months before his marriage, the libellant frequently had sexual intercourse with the libellee and well knew her to be unchaste; he also was well aware of her condition of pregnancy for at least three months before they were married. While he was eighteen years and four months old when he first met the libellee in July, 1913, the marriage did not take place until December 20, 1913. When he first met her, he was a graduate of the Quincy High School, a swimming instructor, and associated with boys and girls of his own age, and so far as appears was possessed of the knowledge and intelligence of the average boy of his age.

In view of the undisputed facts as disclosed by the record, it seems plain that he is not entitled to a decree declaring the marriage void in the absence of evidence to show that he made any inquiry or investigation to ascertain the truth of her statement that he was the father of the child. The fact that he had full knowledge of her unchastity was sufficient to have put him on his guard and to have caused him to take some steps to ascertain the truth or falsity of the charge made by her concerning her condition. *Commonwealth* v. *Shaman,* 223 Mass. 62. *Crehore* v. *Crehore,* 97 Mass. 330. *Donovan* v. *Donovan,* 9 Allen, 140. *Foss* v. *Foss, supra.*

The decision in *Reynolds* v. *Reynolds, supra,* is expressly limited "to the precise case stated in the libel" and is clearly distinguishable from the case at bar. In that case the libellant did not learn of the pregnancy of the libellee by another man until after the marriage, and did not have intercourse with her before that date.

However immature and inexperienced the libellant may have been, the report shows that he was told by his parents not to marry the libellee "but to wait and that time would tell whether or not he was the father of the libellee's child." This warning from those whom he might well have trusted was unheeded, and

his neglect of it shows that with blind credulity and without inves-
tigation he was content to rely upon the libellee's representations,
from the consequences of which the law gives him no remedy.

In accordance with the terms of the report, the entry must be

*Decree dismissing libel affirmed.*

*N. T. Merritt, Jr.,* for the libellant.
*W. G. Todd,* for the libellee.