FLORENCE WILLIAMS *vs.* HARRY WILLIAMS.

MARRIAGE—MISREPRESENTATIONS CONCERNING WEALTH AND SOCIAL POSITION NOT "FRAUD," AVOIDING MARRIAGE.

Fraud, made a ground by *Rev. Code* 1915, § 3004, subd. "d," for annulling a marriage, is a generic term embracing many varying forms of deception, and it may be actively pronounced, or brought about by disingenuous silence; but the fraud must go to the essence of the contract, and misrepresentations concerning wealth or social position will not avoid the marriage.

(*September* 18, 1922).

RODNEY, J., sitting.

*Charles C. Keedy* for petitioner.

Superior Court for New Castle County, September Term, 1922.

Annulment of marriage, No. 38, May Term, 1922.

In this case the petition seeks the annulment of marriage under *Section* 3004 (d) of *Revised Code of* 1915. This section provides:

"A marriage may be annulled for any of the following causes existing at the time of the marriage:   *  *  *  (d) Fraud, force or coercion, at the suit of the innocent and injured party, unless the marriage has been confirmed by the acts of the injured party."

The fraud alleged in the petition as the ground for annulling the marriage is the misrepresentation of the social and financial position of the respondent. It is alleged that the respondent informed the petitioner that he was an Englishman by birth, had estates in England, was a man of large independent means and controlled certain patents which, of themselves, would make him wealthy; that relying upon these representations she married the respondent, only to find that all the representations were false and that even the traveling expenses after the marriage had been defrayed from her own funds, which had amounted at the time of the marriage to some $5,000 or $6,000, and which upon the marriage had been placed under the control of the respondent.

RODNEY, J., delivering the opinion of the court:

Fraud is made by the statute one of the grounds upon which a marriage may be annulled. Fraud, itself, is a generic term embracing many varying forms of deception. It may be actively pronounced or brought about by disingenuous silences. It is, however, not every deception or fraud that will annul a marriage, but only such fraud as goes to the very essentials of the marriage relation. Misrepresentations as to wealth or social position may be sufficient to justify the innocent party in breaking an existing contract or engagement to marry, but when the marriage is once entered into and consummated there springs into existence a relationship which is fundamental to our civilization and which the law immediately recognizes and protects.

In *Cox v. Cox* (*N. J. Ch.*), 110 *Atl.* 924, it is said:

"It is admitted law that false representations as to property, station in life, etc., although they may have induced a marriage, cannot be invoked to have the marriage declared void."

An examination of the authorities leads me to believe that the statement that this is "the admitted law" is correct and every consideration of public policy compels the acceptance of this view.

In the leading case of *Reynolds v. Reynolds*, 3 *Allen* (*Mass.*) 605, it is said:

Opinion.

"In the absence of force or duress, and where there is no mistake as to the identity of the person, any error or misapprehension as to personal traits or attributes, or concerning the position or circumstances in life of a party, is deemed wholly immaterial, and furnishes no good cause for divorce. Therefore, no misconception as to the character, fortune, health or temper, however brought about, will support an allegation of fraud on which a dissolution of the marriage contract, when once executed, can be obtained in a court of justice. These are accidental qualities, which do not constitute the essential and material elements on which the marriage relation rests."

Chancellor Kent says. (2 *Kent, Comm.* 77) that it is well understood that error and even disingenuous representations in respect to condition, rank, fortune, etc., are insufficient to destroy a marriage and render the contract void. The same result may be found in *Schouler on Domestic Relations*, § 23; 1 *Bishop on Marriage and Divorce*, § 459; and in numerous authorities in different jurisdictions, collected in note to *Chipman v. Johnston*, 14 *A. L. R.* 121.

In *Wier v. Still*, 31 *Iowa* 107, the court said:

"Mere false representations by one of the parties as to his fortune, character or social standing will not avoid the marriage."

The court then proceeds to show how impossible any other rule would be, since in numerous marriages false conceptions are entertained concerning the wealth or social standing of the parties.

The case of *Jakar v. Jakar*, 113 *S. C.* 295, 102 *S. E.* 337, is in almost all respects similar to the present case. There a man falsely represented to a Belgian girl that he was of Belgian birth, that he was a physician and medical instructor of high standing and an officer in the United States Army, and that he had considerable and independent means. Notwithstanding the falsity of these claims and the fraud permeating them, the court refused to annul the marriage.

The law presumes that there shall be placed upon the parties the duty and burden of informing themselves as to their future partners by acquaintance and by satisfactory inquiries before entering into a contract where their own happiness for life is so materially involved and which is one of first importance to society in general.

Since no fraud will avoid a marriage which does not go to

the very essence of the contract relation, and since the misrepresentations alleged and proved in this case are not of marriage essentials, the petition must be dismissed.