RICHARD M. MORRIS, an infant, by his mother and next friend, *v.* VIOLA L. MORRIS.

(*March* 18, 1940.)

RODNEY, J., sitting.

*Frederick P. Whitney* for plaintiff.

*Houston Wilson, amicus curiae.*

Superior Court for Sussex County, Annulment of Marriage, No. 16, June Term, 1938.

RODNEY, J., delivering the opinion of the Court:

From the facts at least three important questions arise:

(1)   Can a husband obtain an annulment of marriage on the ground of fraud based on ante-nuptial pregnancy by another man when the husband himself had, prior to the marriage, had sexual relations with the woman whom he afterward married?

(2)   Can either the husband or the wife testify as to "non-access" of the husband at the time of conception?

(a)   In the absence of any relevant statute.

(b)   As affected by any Delaware statute.

(3)   Has the marriage been confirmed?

Before considering the stated questions it seems wise to eliminate certain questions as not here involved, but which some courts seem to have loosely used as the basis of decisions that have some pertinency.   I may eliminate

all cases based on fraud where the fraud consisted in a false claim of pregnancy, thereby inducing a marriage, but where pregnancy, in fact, did not exist. I may also eliminate all cases where the fraud consisted merely of a false claim of premarital chastity. In these cases relief has ordinarily been denied.

I may also eliminate cases where the fraud consisted in pre-marital pregnancy, unknown to the man at the time of marriage and where he had had no pre-marital sexual relations with his wife. In such cases the prevailing rule in America is that relief will be granted to the husband, although the rule may be different in England.

These latter cases are only pertinent to the extent that they show that pregnancy existing at the time of marriage, and which pregnancy is attributable to intercourse with a man other than the husband, does constitute "fraud" within the meaning of the Statute. In *Williams v. Williams,* 2 *W. W. Harr.* (32 *Del.*) 39, 118 *A.* 638, it was held that, to avoid a marriage, the fraud must go to the very essence of the marriage contract relation. I am of the opinion that fraud as to the very essence of the marriage relation is shown when at the time of marriage the wife is pregnant by a stranger and has thus put it out of her power to completely fulfill the marriage contract. *L. R. A.* 1916*E*, 650; *Ann. Cas.* 1914*C*, 1291.

We thus come to the first stated question:

(a) "Can a husband obtain an annulment of marriage on the ground of fraud based on ante-nuptial pregnancy by another man when the man himself had, prior to the marriage, had sexual relations with the woman whom he afterwards married."

It must be admitted that a number of decisions hold that under the stated circumstances relief should be denied

to the husband, and some of these decisions are from jurisdictions entitled to the greatest respect, and whose pronouncements are ordinarily accorded great weight. They must here be more critically examined. *Foss v. Foss*, 12 *Allen (Mass.)* 26; *Crehore v. Crehore*, 97 *Mass.* 330, 93 *Am. Dec.* 98; *Safford v. Safford*, 224 *Mass.* 392, 113 *N. E.* 181, *L. R. A.* 1916F, 526; *States v. States*, 37 *N. J. Eq.* 195; *Seilheimer v. Seilheimer*, 40 *N. J. Eq.* 412, 2 *A.* 376; *Santer v. Santer*, 324 *Pa.* 140, 188 *A.* 531.

The cases denying relief to a husband under the given circumstances generally fall into two groups (1) those that deny relief on the ground that the husband does not come into Court with clean hands, and (2) those which deny relief because of the failure on the part of the man to exercise the necessary degree of independent investigation to determine the truth of the woman's statement. In the first group fall the New Jersey cases such as *Seilheimer v. Seilheimer, supra*. It is difficult to agree with this reasoning. The man may have been guilty of illicit relations with the woman, and such relations might be a bar to an action to dissolve the marriage if such action was based upon fornication or lack of chastity, but such is not the case. The gravamen of the action is not unchastity but because the woman by reason of her action with another resulting in pregnancy is unable to properly enter into the marriage relation with the plaintiff. The parties are in no sense in *pari delicto*. In the second group fall the Massachusetts cases headed by the leading case of *Foss v. Foss, supra*. Massachusetts seems firmly committed to the doctrine that relief will be refused to a man who marries a pregnant woman, having had pre-marital sexual relations with her, where his investigation of the truth of her charge of his responsibility for her condition, did not extend to such a degree as to receive judicial sanction. As a matter of fact these cases have no place in support of a doctrine that pre-

marital relations by the husband, as a matter of law, will deny relief to a husband who has married a pregnant woman upon her assurance that he was the father of the child, when in fact he could not have been. The mere fact that the Courts base their conclusions on the inadequacy of his investigation shows that the pre-marital relation is not the real basis of the decision, for the inference is strong that if the investigation had been made as complete, full and searching as the circumstances would admit, that then relief must be granted notwithstanding the pre-marital relations. But the Massachusetts rule is unsatisfactory on other grounds. The suit is based on willful, positive and actual fraud on the part of the woman. To say that it lies in the mouth of a person guilty of such conduct to object that the defrauded party did not make the most searching investigation to prove the falsity of her statement is reversing a rule of law often applied even in such simple matters as vendor and purchaser. In many cases it would be impossible to determine from whom information could be obtained. An investigation might disclose a lack of chastity, but such is not the basis of the action. The parentage of the unborn child is peculiarly within the knowledge of the woman. Finally it does not follow, as pointed out in *Winner v. Winner, infra*, that all truthfulness and decency has gone from a woman imprudent enough to anticipate with her lover the rights of the marriage relation. It does not follow that her conduct would utterly have destroyed her character and made her unworthy of belief, and I see no reason why a man may not properly place some reliance upon her statement.

It is a noteworthy fact that no case, pertinent to the present discussion, denying relief to the husband, has been determined since 1892. Every case since that time which has come to my attention has granted such relief.

Opposed to the foregoing authorities and holding in direct opposition thereto is an equal number of more modern decisions based, I think, on sounder reasoning. *Lyman v. Lyman,* 90 *Conn.* 399, 97 *A.* 312, *L. R. A.* 1916*E*, 643; *Wallace v. Wallace,* 137 *Iowa* 37, 114 *N. W.* 527, 14 *L. R. A.* (*N. S.*) 544, 126 *Am. St. Rep.* 253, 15 *Ann. Cas.* 761; *Gard v. Gard,* 204 *Mich.* 255, 169 *N. W.* 908, 11 *A. L. R.* 923; *Winner v. Winner,* 171 *Wis.* 413, 177 *N. W.* 680, 11 *A. L. R.* 919; *Jackson v. Ruby,* 120 *Me.* 391, 115 *A.* 90, 19 *A. L. R.* 77.

See also: *Ritayik v. Ritayik,* 202 *Mo. App.* 74, 213 *S. W.* 883; *Di Lorenzo v. Di Lorenzo,* 174 *N. Y.* 467, 67 *N. E.* 63, 63 *L. R. A.* 92, 95 *Am. St. Rep.* 609; *Short v. Short,* 265 *Ill. App.* 133; *Notes in* 11 *A. L. R.* 931; 19 *A. L. R.* 80.

I do not propose to consider, in detail, the reasoning of the foregoing cases. It is sufficient to say that their reasoning and conclusions appeal to my judgment. In most cases where a man has had pre-marital intercourse and is informed that he is the cause of pregnancy he offers marriage as the honorable solution of the problem which he thinks he has caused. When he finds he has been falsely and fraudently deceived and is refused judicial relief, the refusal of relief does not penalize the former illicit and wrongful act, but penalizes solely his later attempt at honorable amend.

I am of the opinion that pre-marital intimacy of and by itself does not, as a matter of law, preclude a man from relief in dissolution of the marriage relation on the ground of fraud where the fraud alleged is pregnancy existing at the time of marriage, where such pregnancy has been caused by intercourse with another man. There seems to be no logical reason to refuse to a husband the opportunity to show the parentage of a child conceived before marriage, when Courts allow proper inquiry to be made concerning the paternity of a child conceived after mar-

riage. This is usually solely a question of competent and legal proof. The State can have no interest in a marriage which can exist in name only and which is based on a fraudulent and false representation of the most fundamental human relation.

The ground for the present annulment suit is that the defendant, at the time of the marriage to the plaintiff, was with child by another. As said by Morse, J., in *Sissung v. Sissung*, 65 *Mich*. 168, 31 *N. W*. 770, 773:

> "The essence of the marriage contract is wanting when the woman, at the time of its consummation, is bearing in her womb, knowingly, the fruit of her illicit intercourse with a stranger; and the result is the same whether the husband is ignorant of her pregnancy, and believes her chaste, or is cognizant of her condition, but has been led to believe that the child is his."

I now approach the question of proof, which brings me to the second point.

2. "Can either the husband or the wife testify as to 'non-access' of the husband at the time of conception?"

(a) In the absence of any relevant statute.

(b) As affected by any Delaware statute.

A rational discussion of this question, it seems to me, requires its subdivision into two separate and distinct branches. First, where the child is both conceived and born in wedlock and, secondly, where there is pre-marital conception but birth in wedlock. I am solely concerned with the second branch.

In 1777, in *Goodright v. Moss Cowp*. 591, 98 *Eng. Report* 1257, 11 *Eng. Rul. Cas*. 518, Lord Mansfield held that, founded on "decency, morality, and policy," neither husband nor wife would be permitted to give any testimony as to non-access of the husband at the time of conception or of circumstances tending to prove non-access. If any doubt existed as to the subsequent English rulings they have been

set at rest by *Russell v. Russell* (1924), *A. C.* 687, 13 *Br. Rul. Cas.* 246, which adopted and followed Lord Mansfield's ruling. In America the various jurisdictions have, with great uniformity, adopted the so-called "Mansfield Rule." *Bancroft v. Bancroft,* 4 *Boyce* (27 *Del.*) 9, 85 *A.* 561, is no exception. There the Court in determining the legitimacy of the child declined to consider the testimony or admissions of the parent but based their conclusion on other evidence. One dissenting jurisdiction for a time was *Kansas,* but in *Martin v. Stille,* 129 *Kan.* 19, 281 *P.* 925, 68 *A. L. R.* 415, the Court repudiated its former rulings and adopted the Mansfield Rule. Dissent was also expressed in *Loudon v. Loudon,* 114 *N. J. Eq.* 242, 168 *A.* 840, 89 *A. L. R.* 904, by a Court which divided eight to six. The Court consisted of eight Supreme Court justices and six judges, which latter judges may have had legal training but, it appears, are not required to have such training. The majority of the Court (eight) consisting of three justices and five judges, declined to adopt the Lord Mansfield Rule, while the minority of the Court, consisting of five justices of the Supreme Court and one judge, adhered to such Rule.

A great dissent from the Mansfield Rule has been expressed by Professor Wigmore in his work on Evidence. In *Vol.* 4 (*2d Ed.*), *Sec.* 2063, he very forcibly and clearly assails the Rule, stating that there never was any true precedent for it and just as little reason to maintain it. His analysis and reasoning are very convincing, but the uniform current of judicial opinion in England and America is to the contrary. Regardless of the inconsistency of the Rule or the eminence of the commentator, it would seem that the Rule is so firmly entrenched in our law as to make a change too difficult save by legislation.

Extensive and copious notes discussing all of the cases are found in 60 *A. L. R.* 380; 68 *A. L. R.* 421; 89 *A. L. R.*

911; 13 *Br. Rul. Cas.* 312; 3 *Jones on Ev.* (*4th Ed.*), *Sec.* 733, *page* 1316; 7 *Am. Jur.* 640, *Sec.* 21.

When suit involves the question that a child, though born in wedlock is surely the result of ante-nuptial conception it would seem that the rule excluding the testimony of husband or wife as to "non-access" must depend upon two different principles based on the fact as to whether the husband has had or has not had pre-marital intercourse with the woman he subsequently married. Where a man married and had had no pre-marital intercourse with his wife and a month or two later a child was born it is, to me, an illogical and erroneous doctrine to hold that he could not give evidence of "non-access." The rule as to "non-access" had its origin and draws its strength from the prohibition that any possible parent could bastardize his own issue. Public policy closes his mouth when the issue may be his. Where a child is born a month or two after marriage and the husband has had no pre-marital relations with his wife a refusal to permit him to testify to such facts is to compel him to tacitly admit the utterly false supposition of illicit pre-marital intercourse. Lord Halsbury in *Poulett Peerage Case*, (1903) *A. C.* 395, strongly expresses the view here given. See also *Re Duckworth*, 55 *Ont. L. Rep.* 272. This very principle lies at the base of that long line of American decisions which grant to a husband a right to dissolve the marriage relation where, at the time of marriage, his wife is pregnant and the husband is ignorant of that fact and has had no pre-marital intercourse. See notes in *L. R. A.* 1916*E*, 650; *Ann. Cas.* 1914*C*, 1291.

The foregoing distinction is here drawn not because of its exact pertinency but because it is unnecessary for me to adopt the rule in its fullest extent as some other Courts have done. In the present case the plaintiff admits pre-marital intercourse with the defendant.

■ Where the Mansfield Rule has found favor it has been applied to those cases where a child is born in wedlock and conception took place prior to marriage and the husband and wife had been guilty of pre-marital intercourse, and neither will be allowed to testify as to the non-access of the husband at the time of conception. The rule as laid down in *Wallace v. Wallace, supra* (137 *Iowa* 37, 114 *N. W.* 530, 14 *L. R. A.* (*N. S.*) 544, 126 *Am. St. Rep.* 253, 15 *Ann. Cas.* 761), is:

"But precisely the same rules of evidence obtain in such [a case] as when it is sought to prove that a child conceived during wedlock is not the offspring of the husband. Born in wedlock the presumption of the legitimacy of the child obtains, even though this happen so soon after marriage as to render it certain that it was the result of coition prior thereto. *State v. Schoemaker* [*supra*], 62 *Iowa* 343, 17 *N. W.* 589, 49 *Am. Rep.* 146. In other words, antenuptial conception does not weaken the presumption of legitimacy arising from postnuptial birth. *Dennison v. Page*, 29 *Pa.* 420, 72 *Am. Dec.* 644; *Wilson v. Babb*, 18 *S. C.* 59; *Zachman v. Zachman*, 201 *Ill.* 380, 66 *N. E.* 256, 94 *Am. St. Rep.* 180; 8 *Ency. Evidence*, [*p.*] 166. And, when there has been antenuptial coition and the husband has married under the supposition that his wife's pregnancy was by himself, evidence of nonaccess must be of the same conclusive character exacted to bastardize a child conceived during wedlock. In *Dennison v. Page* [*supra*], the Court, after reviewing many decisions, said: 'Whether it was begotten in or out of wedlock, where the marriage precedes the birth, the presumption of paternity is the same, and the like evidence is required to bastardize the issue. That evidence is proof of nonaccess, where the husband, or he who subsequently becomes such, has access to the mother of the child, the presumption that he is its father is conclusive.' "

The only testimony in the present case of the non-access of the plaintiff at the time of conception was the testimony of the plaintiff himself and admissions of the defendant. Both are clearly inadmissible under the Mansfield Rule unless some statute has changed that Rule, and to that question I now turn. I am referred to *Section 3534, Revised Code* (1935) as having such effect.

*Section 3534 of Revised Code* (1935), is a section of the Chapter relating to desertion and support and was originally adopted February 24, 1913, as *Sec.* 8, *Chapter* 262, *Vol.* 27, *Laws of Delaware.* It provides:

"No other or greater evidence shall be required to prove the marriage of such husband and wife, or that the defendant is the father or mother of such child or children, than is or shall be required to prove such facts in a civil action. In no prosecution under Sections 2 to 14, inclusive, of this Chapter, shall any existing statute or rule of law prohibiting the disclosure of confidential communications between husband and wife apply, and both husband and wife shall be competent and compellable witnesses to testify against each other to any and all relevant matters, including the fact of such marriage and the parentage of such child or children * * *."

■ In order to show the lack of application of the cited statute to the present question it is only necessary to say that the statute by its express terms only applies to a "prosecution under *Sections* 2 to 14 of this Chapter." It recognizes existing rules of law but purports to change them solely with reference to specific prosecutions. The present proceeding is not within the affected class and the statute has no application. Lists of cases construing statutes bearing some analogy to our own are found in 60 *A. L. R.* 390; 68 *A. L. R.* 421; 13 *Br. Rul. Cas.* 323.

In *Hicks v. State,* 97 *Tex. Cr. Rep.* 629, 263 *S. W.* 291, there was construed a statute which seems to have been the exact counterpart of our own. The testimony of the husband was excluded but the Court went much further than I should desire to go, since the testimony excluded was that of the husband who had had no pre-marital intercourse with his wife.

Some recognition is required of the anomalous situation created by the statutes. Exclusion of the testimony of husband and wife as to non-access of the husband had its origin in the thought that parents should not bastardize their own children, and originally was largely applied to direct or filiation cases. From these the rule was extended to general cases and this has been the uniform rule for many decades. Statutes similar to the cited statute remove the disability of the parents in direct or filiation cases leaving the rule to apply solely to those cases in which it did not originally apply. It would seem, however, that the

anomaly, if existent, was caused by legislation; legislation can remove it.

The third question preliminarily put was:

"Has the marriage been confirmed?"

The answer to this question requires that, on another ground, the petition be dismissed. The marriage took place on June 16, 1937. The plaintiff maintained marital relations with his wife until the birth of the baby on December 14, 1937. Upon the wife's return home on December 24, 1937, the husband, the plaintiff, resumed marital relations, in every sense that the word implies, and continued these until about January 18, 1938, when, after an argument, the separation took place. In my opinion these facts constituted a confirmation of the marriage and the statute only allows dissolution of the marriage on the ground of fraud "unless the marriage has been confirmed by the acts of the injured party."