HELEN A. DYJAK MISTAL *vs.* WALTER J. MISTAL.

Essex.   December 9, 1943. — December 28, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Marriage and Divorce,* Annulment.   *Fraud.*

A wife was not entitled to annulment of marriage on the ground that, to
induce the marriage in December, the husband, then in a sanatorium
being treated for tuberculosis of one lung, had falsely represented to
her that his case was mild and that he expected to be out of the sana-
torium in the spring, where it appeared that she made no effort to
secure information as to the severity of his case from any other person
and it did not appear that other sources of information were not rea-
sonably available to her.

PETITION, filed in the Probate Court for the county of
Essex on December 17, 1941.

The case was heard by *Costello,* J.

*H. F. Collins,* for the petitioner, submitted a brief.

No argument nor brief for the respondent.

FIELD, C.J.   This is an appeal from a decree of a Probate
Court dismissing a petition brought in that court on Decem-
ber 17, 1941, for annulment of the marriage between the
petitioner and the respondent.   The case was heard in the
Probate Court upon oral evidence in February, 1942.   It
comes before us with a report of the material facts found by
the judge and a transcript of the evidence.

The parties were married in December, 1940, "around
Christmas."   The findings of fact made by the judge include
the following findings which are not plainly wrong: "At the
time of the marriage, the respondent was a patient at the
Essex Sanatorium and had been a patient at that institution
since September 3, 1940.   As a patient there, he was treated
for tuberculosis of one lung.   His present condition is favor-
able, but he will continue to be a patient at that institution
for a further period of six months to a year.   At the time of
her marriage the petitioner was nineteen years of age and
had become engaged to marry the respondent shortly before

the latter entered the sanatorium. . . . The parties never lived together as husband and wife." The findings of the judge with respect to his "present condition" and his continuing to be a patient at the sanatorium obviously refer to the time of the hearing of the case in February, 1942. The finding of the judge that in "December, 1940, the respondent told the petitioner that he had a mild case of tuberculosis and expected to be out in the spring and induced the petitioner to be married on December 25, 1940, rather than to wait until June, 1941, when they had planned to be married," is not plainly wrong except that the evidence does not fix the date of the marriage more precisely than "in December around Christmas" in 1940.

The petitioner relies for annulment upon the ground that the respondent misrepresented to the petitioner his condition of health and thereby induced her to marry him in December, 1940, instead of waiting until June, 1941, as they had previously planned, in other words, upon the ground of fraud of the respondent. The only representation relied on by the petitioner is a representation as to the mildness of the respondent's disease and the length of time that he would remain in the sanatorium. This representation by the respondent, as found by the judge, was that "he had a mild case of tuberculosis and expected to be out in the spring," though the petitioner testified that the respondent stated also that he "was sure of being out in the spring."

We need not consider whether in any circumstances concealment by one party to a marriage, from the other party thereto, of the fact that the former had tuberculosis, or a false representation by one party to the other party that the former did not have tuberculosis, would be such fraud as constitutes ground for annulment of the marriage. See G. L. (Ter. Ed.) c. 207, § 14; *Reynolds* v. *Reynolds*, 3 Allen, 605, 606; *Foss* v. *Foss*, 12 Allen, 26, 28; *Cummington* v. *Belchertown*, 149 Mass. 223, 227–228; *Smith* v. *Smith*, 171 Mass. 404, 407; *Vondal* v. *Vondal*, 175 Mass. 383; *Safford* v. *Safford*, 224 Mass. 392, 393; *Chipman* v. *Johnston*, 237 Mass. 502, 503–504; *Richardson* v. *Richardson*, 246 Mass. 353; *Arno* v. *Arno*, 265 Mass. 282, 283–284; *Hanson* v.

*Hanson,* 287 Mass. 154, 159. Compare *Sobol* v. *Sobol,* 88 Misc. (N. Y.) 277, and *Davis* v. *Davis,* 90 N. J. Eq. 158, upon which the petitioner relies. Upon this point we make no intimation. There has been no decision in this jurisdiction upon the precise point, although the cases here cited contain statements of general principles applicable to annulment of marriage and in some instances to annulment of marriage on the ground of disease of one of the parties.

But, whatever might be true in other circumstances, the findings and evidence in the present case do not entitle the petitioner to a decree of annulment. They do not show such fraud of the respondent as would entitle the petitioner to such a decree.

Undoubtedly at the time the representation by the respondent relied on by the petitioner was made and at the time the petitioner and the respondent were married the respondent was a patient in the sanatorium being treated for tuberculosis and had that disease. The facts that the respondent was in the sanatorium and that he had tuberculosis were then known to the petitioner. She was told these facts by the respondent even if she did not learn them from other sources. It is a matter of common knowledge that tuberculosis is, or at least may be, a serious disease (compare *Brown* v. *Greenfield Life Association,* 172 Mass. 498, 503; *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 453), and it is to be assumed that the petitioner shared this common knowledge.

The information that the petitioner received, that the respondent was in the sanatorium and had tuberculosis, was sufficient to put her on her guard. It was sufficient to put her on inquiry as to the severity of the respondent's case of tuberculosis. And the evidence does not show that it would not have been reasonably possible for her to secure information upon this subject by investigation, particularly by inquiring of the physicians at the sanatorium. Indeed, according to the petitioner's own testimony, she made such an inquiry a few months after her marriage and was given information about his condition at that time. It is fairly to be assumed, in the absence, as here, of evidence to the

contrary, that if she had made a like inquiry before her marriage, she would have been given information about the then condition of the respondent. There is no evidence, however, that the petitioner made any effort to secure such information from any person other than the respondent. According to her testimony she apparently doubted the wisdom of being married in December since she told the respondent that she "thought it would be better to wait until June." But she seems to have relied implicitly upon his statement to her as to the mildness of his case and the time that he would remain in the sanatorium. She testified that she "didn't think he would ever lie to . . . [her]." According to her testimony the respondent said to her that "he wanted to be married in December and we should be married in December," and she "didn't have anything to say about that." While there is no evidence of duress it is apparent that the petitioner yielded to the respondent's importunities rather against her own judgment without any investigation as to the truth or falsity of his statement in regard to the severity of his case of tuberculosis or the likelihood of his being out of the sanatorium in the following spring.

The law does not permit annulment of a marriage in such circumstances. It was said in *Safford* v. *Safford*, 224 Mass. 392, 393, where a husband was seeking annulment of his marriage, that it "has been decided by this court that a contract of marriage will not be set aside upon an application by a husband upon the ground of fraud, where it appears that he relied solely upon statements of the . . . [wife] and took no steps to determine their truth or falsity." See *Arno* v. *Arno*, 265 Mass. 282, 284. In the *Safford* case the court quoted and relied upon the following language in *Foss* v. *Foss*, 12 Allen, 26, 28: "If it appears that he had the means of ascertaining the falsity of the statements made to him, or that the nature of the transaction and the circumstances attending it were such as to put a reasonable person on inquiry, the presumption of deceit arising from proof of the fraud will be repelled and the party will be left to bear the consequences of his own want of due diligence and caution. A party cannot escape from obligations which

he has voluntarily assumed, on the ground that he has been deceived and defrauded, if he neglects to avail himself of means of information within his reach, or if he places a blind or wilful confidence in representations which were not calculated to deceive a man of ordinary prudence and circumspection, for although he may have been in point of fact deceived and imposed upon, yet it is a consequence or result of his own folly or neglect." See also *Crehore* v. *Crehore*, 97 Mass. 330. In the *Safford* case a husband was seeking annulment of his marriage on the ground that at the time of the marriage his wife, with whom he had previously had sexual intercourse, was pregnant and that she had falsely represented to him that she had never had sexual intercourse with any other man and that he was the father of the child. The *Foss* case was closely similar. A somewhat different view has been taken in some other jurisdictions on the ground that ordinarily a prospective husband should not be expected to seek information, upon this subject, elsewhere than from his prospective wife. See *Winner* v. *Winner*, 171 Wis. 413, 416–417, although in that case it was intimated that the conclusion in the *Foss* case might be right upon its particular facts. See also *Jackson* v. *Ruby*, 120 Maine, 391. However, we need not reconsider the *Foss* and *Safford* cases as applied to representations such as were there involved. It is enough to say with respect to such a representation as is involved in the present case, made by a prospective husband as to his state of health, that there is no sound reason that excuses the prospective wife from taking steps to ascertain, elsewhere than from her prospective husband, the truth or falsity of his representation as to the state of his health, when she has information that he has a serious disease, and that permits the wife, who has taken no such steps, to secure annulment of the marriage on the ground that she was deceived by the fraud of her husband. The relation of trust and confidence that exists between a prospective husband and a prospective wife did not justify the petitioner in the circumstances of this case in relying wholly upon the representation of the respondent as to the state of his health. See *Jason* v. *Jason*, 289 Mass.

72, 77–78. For the reason here stated alone, even if the representation of the respondent was false, as we do not intimate, the petitioner is not entitled to maintain her petition. The petition was dismissed rightly.

*Decree affirmed.*