**HUSBAND, Plaintiff,**

v.

**WIFE, Defendant.**

Superior Court of Delaware, New Castle.

Feb. 10, 1970.

Emmett J. Conte, Jr., Wilmington, for plaintiff.

John M. Bader, Wilmington, for defendant.

QUILLEN, Judge.

The plaintiff sues for an annulment of a marriage on the grounds of force, coercion and fraud. This opinion constitutes the Court's decision and order in the matter after a contested hearing.

The Court finds that there is insufficient evidence to grant an annulment on the basis of force or coercion. It is apparent that this claim is strained and the plaintiff was not in fact forced to enter the marriage by threats.

In regard to the factual conflict of testimony on fraud, the Court generally accepts the testimony of the plaintiff husband. The Court finds that the plaintiff did enter the marriage because of the defendant's false representation that she was pregnant by the plaintiff. The plaintiff sought no verification of the defendant's assertion. The plaintiff's testimony in this regard is corroborated by the testimony of his step-daughter relating to plaintiff's out-of-court statements showing his state of mind immediately prior to the marriage. I assume, without deciding, that such corroboration is legally sufficient.

This Court recently spelled out at some length its understanding of the Delaware public policy as to annulments generally and as to annulments for fraud specifically. Husband v. Wife, Del.Super., 257 A.2d 765 (1969). Our public policy is clear. Consummated marriages are not lightly set aside. Fraud, as the basis for

an annulment, must go to the very essentials of the marriage.

■ The Court is not aware of any Delaware case dealing with the precise grounds presented here, false pretension of pregnancy. But generally Courts of other jurisdictions have refused to grant annulments on such grounds. 4 Am.Jur.2d, Annulment of Marriage, § 41, p. 467. This position is supported by the clear weight of authority. See Annotation, 15 A.L.R.2d 726–728. Such refusal is based on the theory of pari-delicto, that is, because of premarital intercourse, the plaintiff does not come into Court with clean hands [Tyminsky v. Tyminsky, 8 Ohio Misc. 202, 221 N.E.2d 486 (1966) and Mobley v. Mobley, 245 Ala. 90, 16 So.2d 5 (1943)] or on the basis that the Courts should not extricate the plaintiff from a predicament based on his own illicit intercourse [Diamond v. Diamond, 101 N.H. 338, 143 A.2d 109 (1958) and Levy v. Levy, 309 Mass. 230, 34 N.E.2d 650 (1941)].

A minority view has been adopted by some decisions. These decisions have allowed relief where the plaintiff proves the marriage resulted because of the pregnancy misrepresentation, particularly if the misrepresentation was of such a nature to deceive an ordinarily prudent person. DiLorenzo v. DiLorenzo, 174 N.Y. 467, 67 N.E. 63, 63 L.R.A. 92 (1903); Garfinkel v. Garfinkel, 9 A.D.2d 98, 191 N.Y.S.2d 574 (1959);[1] Masters v. Masters, 13 Wis.2d 332, 108 N.W.2d 674 (1961); Parks v. Parks, 418 S.W.2d 726 (Ky.1967).

In Delaware, an annulment is an extraordinary remedy. There is no required period of residency so long as one party is a resident when the petition is filed. A final decree is entered immediately on the disposition of the case. Our Courts, as noted above, have interpreted our statute strictly and our State adheres to the tradi-tional orthodox view in regard to annulling a marriage on the ground of fraud.

In Morris v. Morris, 1 Terry 480, 13 A.2d 603 (Super.Ct.1940), Judge Rodney did permit a marriage to be annulled where the wife was pregnant by a stranger to the marriage at the time of the marriage. Even in that case, however, Judge Rodney, with characteristic thoroughness, went to great lengths to distinguish contrary authority "from jurisdictions entitled to the greatest respect". While some of the language of that opinion, when lifted out of context, may appear at first blush to offer comfort to the plaintiff here, the opinion is quite clear as to the present situation. Judge Rodney carefully wrote at 13 A.2d 604–605:

"Before considering the stated questions it seems wise to eliminate certain questions as not here involved, but which some courts seem to have loosely used as the basis of decisions that have some pertinency. *I may eliminate all cases based on fraud where the fraud consisted in a false claim of pregnancy, thereby inducing a marriage, but where pregnancy, in fact, did not exist.* I may also eliminate all cases where the fraud consisted merely of a false claim of premarital chastity. *In these cases relief has ordinarily been denied.* (Emphasis added).

Thus, Judge Rodney expressly recognized the majority rule would govern the present case.

■ A false representation of pregnancy, unlike pregnancy in fact by a stranger to the marriage, does not go to the very essentials of the marriage. The essence of the marriage contract is wanting when a woman, at the time of its consummation, is bearing in her womb, the fruit of her illicit intercourse with a stranger. Sissung v. Sissung, 65 Mich. 168, 31 N.W. 770, 773 (1887). Such condition prevents the wife

1. But see the New York cases of Donovan v. Donovan, 147 Misc. 134, 263 N.Y.S. 336 (1933), appeal dismissed, 241 App.Div. 906, 272 N.Y.S. 157, 158 (1934) and Cole v. Cole, 268 App.Div. 564, 52 N.Y.S.2d 100 (1944).

from performing the normal marital duty of bearing only the children of her spouse. A false representation of pregnancy, however, in itself does not hinder the performance of marital obligations. Thus, measured by the traditional fraud test in Delaware, and even eliminating any theory of pari-delicto, an annulment for a false pretension of pregnancy should not be allowed. Rhoades v. Rhoades, 7 N.J.Super. 595, 72 A.2d 412 (1950), aff'd 10 N.J.Super. 432, 77 A.2d 273 (1950).

Furthermore, the existence of pregnancy, unlike the determination of the father of an unborn child, is a matter which can be readily ascertained by simple investigation. The parentage of an unborn child may be peculiarly within the knowledge of the woman, but the fact of pregnancy is not. It is simply the type of representation, not going to the essentials of the marriage, concerning which "persons desiring to marry have a burden to make such investigation of the prior lives of their prospective spouses as they deem fit." DuPont v. DuPont, 8 Terry 231, 90 A.2d 468 (Sup. Ct. 1952); Husband v. Wife, Del.Super., 257 A.2d 765 (1969).[2]

I realize that, in this area of the law, there are those who note we live in changing times. A Judge must indeed guard against the imposition of his own personal views as society's standard. But this caution applies to both the liberal and the conservative. And the common law provides the guideline in the form of precedent, which should ordinarily be determinative in the questionable situation.

Moreover, in this instance, if the public policy is examined, the wisdom of tradition has other rewards. The orthodox rule, which disallows an annulment because of a false premarital claim of pregnancy, minimizes the chances of fraudulent annulment suits by men in an age when both premarital intercourse and premarital pregnancy are not exactly novel events. Females, particularly young females frequently have a tendency to imagine themselves pregnant and, in many cases, it could be extremely difficult for a Court, when a marriage comes to disharmony, to retroactively distinguish a false representation from girlish anxiety. Moreover, the increasing tolerance of illegitimate births, particularly with an adoption alternative, as opposed to insistence on "shotgun marriages", indicates that the traditional rule does not necessarily have the effect of creating and preserving unstable marriages. If the times demand a public policy change, it would appear to me better to discourage marriage in the first instance than to weaken the traditional strict standards in annulment cases.

The plaintiff here is in a very unfortunate situation. But neither the immediate personal hardship nor the public policy questions presented justify judicial departure from time honored principles. Delaware should not adopt a rule which would permit a husband to avoid a marriage on the basis of a misrepresentation which does not go to the very essentials of the marital contract, especially when the husband did not even bother to exercise the care of a reasonably prudent man in investigating the representation.

The plaintiff here is indeed in a very unfortunate situation. But fortunately, in this case, short of annulment, there is relief available. Tyminsky v. Tyminsky, *supra*.

The petition to annul the marriage is denied. It is so ordered.

2. The Supreme Court relied on the *Morris* case, *supra*, for the language quoted above. Actually, the *Morris* case, which as noted involved pregnancy by a stranger, does not support the quoted language. I compounded the error at 257 A.2d 768 in the second case cited above. But the quoted language does have ample support in other Delaware cases. See Judge Rodney's opinion in Williams v. Williams, 2 W.W.Harr. 39, 118 A. 638, 639 (1922) and Judge Herrmann's opinion quoting the leading case of Reynolds v. Reynolds, 85 Mass. (3 Allen) 605 (1862) in Anonymous v. Anonymous, 7 Terry 458, 85 A.2d 706, 718 (Super.Ct.1951).