771 A.2d 978 (2000)
WRONALD S.B., Petitioner,
v.
IRINA P.B., Respondent.
No. CN99-08428.
Family Court of Delaware, New Castle County.
Submitted: February 7, 2000.
Decided: April 19, 2000.
Joseph A. Wahl, Wilmington, for petitioner.
Irina P.B, respondent pro se.
*979 CROWELL, Associate Judge.
A hearing was held on January 27, 2000, on the Petition for Annulment filed by Wronald S.B (Husband) against Irina P.B. (Wife). Present in the courtroom were Husband and his attorney, Joseph A. Wahl, Esquire. Although notice was mailed to Wife in St. Petersburg, Russia, she failed to appear.
She informed the Court by letter that she could not afford to return to the United States, nor could she obtain a visa to come. At the conclusion of the hearing, Husband's attorney was invited to present a memorandum of law which was filed on February 7, 2000.

Background Facts
Husband testified that while he was on vacation in late August and early September, 1998, he, then age forty-three, and Wife, then age thirty-nine, met in a nightclub in St. Petersburg, Russia. He claimed that after meeting, they spent a part of every day of the remainder of his vacation together, except for one day, and that they had dinner on three occasions. He said that she is fluent in English and has been an English teacher. He claimed that at dinner in her apartment on the evening before he left, she stated she was in love with him and he believed that they had developed a meaningful relationship. He noted that the Russian economic crisis had begun while he was there and she expressed an interest in living in the United States. He claimed that they communicated by phone and e-mail from September 5, 1998 until February 5, 1999, when she and her fourteen-year-old daughter, Maria, came to the United States on a K-1 visa that permits financeées of American citizens to come to the United States. From February 5, 1999, until April 5, 1999, Wife and her daughter resided in his home in two separate guestrooms. In accordance with the tenets of the Christian Orthodox religion, to which beliefs Husband has subscribed for 2½ years, they agreed to have no sexual relations prior to their marriage. Husband testified that following their marriage on April 5, 1999, Wife no longer greeted him and she spent every day in bed, leaving the household chores to him. While they had sexual relations on several more occasions, she often would rebuff his advances.
He testified that on April 28, 1999, he woke up after midnight to find that Wife was not in his bed. He claimed he looked for her and found her in bed with her daughter in her daughter's bedroom. He believed they were engaged in sexual relations. Husband said he confronted Wife about the incident, telling her that they would need to talk about the matter and obtain counseling. When he arrived home that afternoon, Mother and her daughter were gone. He claims he has been married twice before for brief periods of time and feels that this was not a legitimate marriage.
Wife and her daughter returned to St. Petersburg, Russia, following the parties' separation. In her written answer to the Petition for Annulment, she had no objection to a divorce or an annulment but she adamantly denied there were any fraudulent acts or misrepresentations on her part. She represented that before their marriage, Husband asked her to sign a prenuptial agreement, which she refused to sign, providing that if they obtained a divorce, she would have to pay him $5,000. She stated that her intention to live with Husband in his home was sincere and genuine and she denied she neglected her household duties, saying she was caring, clean and neat. Wife charged that Husband systematically abused, humiliated and showed disrespect to her and her daughter. She asserted in her answer that he demanded she go to bed with him at 7:00 p.m. She stated that he became *980 angry when she inadvertently threw out an old can cap and he forbade her and her daughter from visiting the Vandebriel family with whom she had become friends. She represented that Husband's threats and accusations caused stress for her and made her daughter scared to sleep at home. After an incident on April 28, 1999, she claimed that Husband turned off the telephone and computer and hid her keys and "cases". She stated that she and her daughter "escaped" to the Vandebriel's home where they called the Russian Embassy, INS and the police. Ms. Vandebriel purchased the tickets for Wife and her daughter to return to Russia.

Grounds for Annulment Based on Fraud
While, in more recent times, the grounds for divorce in Delaware have become more liberal, Delaware law has continued to limit the grounds for obtaining an annulment to very specific, narrow circumstances.[1]
Husband's petition seeks an annulment under 13 Del.C. § 1506(a)(4), which states as follows:
(4) One party entered into the marriage in reliance upon a fraudulent act or representation of the other party, which fraudulent act or representation goes to the essence of the marriage.
While the Court has been unable to find any recent Delaware decisions discussing what constitutes fraud that "goes to the essence of the marriage", annulment under Delaware law has been considered an extreme remedy[2] It has been held that the public policy of the State of Delaware requires that a consummated marriage should not be lightly dissolved or set aside[3] and should be forbidden except on the most convincing proof.[4] In interpreting fraud as a basis for annulment, Delaware case law has underscored the statutory language and adhered to the orthodox rule that only such fraud as goes to the very essence of the marriage relation will suffice as a ground for annulment.[5] More *981 specifically, Delaware courts have granted annulments on the basis of fraud in only very limited circumstances:
(1) Where the wife concealed at the time of the marriage she had an incurable case of syphilis[6]. It should also be noted that at the time of the marriage, the Delaware statute expressly prohibited the marriage of one who was "venereally diseased".
(2) When the husband, thinking the wife was carrying his child at the time of their marriage, learned after the marriage that the wife was pregnant by someone else[7], and
(3) When the sole motivation of the marriage for a citizen of Albania was to obtain a preferential entry into the United States as the spouse of an American citizen[8]
On the other hand, the Delaware courts have concluded that the allegations of fraud did not go to the essence of the marriage and have denied an annulment in the following circumstances:
1. A representation by the wife before the marriage that she was pregnant, which turned out, after the marriage, to be false.[9]
2. The wife's concealment of a premarital misdemeanor conviction and periodic disabling drug use.[10]
3. The wife's alleged premarital concealment and misrepresentations as to moral conduct and character as well as alleged concealments as to the sources of her funds.[11]
4. The wife's concealment of pre-marital unchastity;[12] and
5. A premarital misrepresentation concerning wealth or social position[13].
When the Delaware Supreme Court was urged to overrule the line of decisions of Delaware Superior Court as fraud as a ground for annulment and adopt a more lenient rule as had been applied in the courts of New York, the Delaware Supreme Court declined to do so, stating "These decisions extend over a period of time and have become settled principles in our law of annulment. If the rule laid down by these cases is considered to be harsh and outmoded, its change should be urged upon the General Assembly."[14] In commenting on the more restrictive approach towards fraud as a ground for annulment, taken by the courts of the State of Delaware, the Superior Court of Delaware has commented:
The law presumes that there should be placed upon the parties the duty and burden of informing themselves as to their future partners by acquaintance and by satisfactory inquiries before entering into a contract where their own happiness for life is so materially involved and which is one of first importance to society in general[15].

Husband's Contentions
Husband contends that Wife committed the following fraudulent acts which justify his request for an annulment:
*982 1. Wife's representation that she intended to permanently live in the United States when he believed she wanted to return to Russia.
Husband believes that it was Wife's intention to return to Russia and that he would not have married her had he known she wanted to live in Russia. His belief is based on the fact that she indicated, as the parties were returning home from the INS in Philadelphia on April 24, 1999, that she wanted to stop to buy tickets to return to Russia and he feels certain that it was not just for a vacation.
Husband has failed to establish Wife committed fraud in representing that she intended to live in the United States but then after the marriage decided to return to Russia. Husband introduced no evidence to indicate that prior to the marriage, Wife did not intend to remain in the United States. It is just as reasonable to assume that Wife changed her mind after the parties' marriage as to conclude she committed fraud. It should be noted that this case is also unlike Babis v. Babis, supra, in that Wife's return to Russia following the parties' separation negates any argument she was using the marriage to remain in the United States. The fact that she may have changed her mind after the parties were married does not establish that she had that intent prior to the parties' marriage. Therefore, his request for annulment on the basis of that alleged fraud is denied.
2. Wife's refusal to assume marital duties. Wife's refusal to assume marital duties including engaging in sexual relations, performing household duties and having children similarly was not proved with convincing evidence. The fact that Wife may not' have engaged in sexual relations when or as often as he would have liked or that she failed to perform the household duties as he would have liked does not establish that she committed fraud. Furthermore, under the narrow interpretation of fraud which requires that the fraud go to the essence of the marriage, such allegations, even if true, would not justify granting an annulment although they very well might establish incompatibility as a ground for divorce.
3. Wife's misrepresentation about her religious beliefs. Husband said that Wife represented prior to the marriage that she was an Orthodox Christian, but that after the parties were married, she told him that she would no longer go to church with him and that attending church was a waste of time. He would not have married her if he had known she was not an Orthodox Christian. Husband failed to introduce any evidence that Wife did not consider herself an Orthodox Christian after the parties' marriage simply because she changed her mind about wanting to go to church with him or had doubts about the value of attending a church service with him. To the extent Husband believes Wife's representations constituted a concealment of her character, Delaware law has held that that does not constitute fraud to justify an annulment.[16]
4. Wife's concealment that she was involved in an incestuous or lesbian relationship with her daughter. Husband alleges he found Wife in bed with her daughter. The Court finds Husband's testimony is not sufficiently clear and convincing to conclude that any inappropriate sexual activity occurred. Wife's answer indicated that her daughter was scared to sleep in Husband's home. Even if any inappropriate activity occurred, there was no evidence that such activities occurred prior to the parties' marriage or that there was any express misrepresentation as to those activities by Wife. Therefore, Husband's request for annulment on the basis *983 that such concealment is fraud is denied. Again, fraud involving a concealment of premarital moral conduct or character is not a basis for annulment.

Court Rulings
While Husband no doubt believes the wife that he married did not turn out to be the wife he expected her to be, that situation can be said for many marriages. From the vantage point of marriage in the twenty-first century, this Court might find it difficult to conclude that issues of moral conduct and character do not go to the essence of a marriage, but this Court has serious questions as to whether such marriages should be dissolved by annulment or whether the marriage should be dissolved more appropriately by the divorce process. That decision, however, is not for this Court to make but for the General Assembly should it choose to address this issue. In the absence of legislation changing the approach of a long line of Delaware cases, this judge declines to do so.
Because Husband has failed to establish that Wife committed sufficient fraud to justify an annulment, his Petition for Annulment is denied. Nothing, however, precludes Husband from seeking a divorce, and indeed Wife has indicated that she would voice no objection to a divorce.
IT IS SO ORDERED.
NOTES
[1] 13 Del.C. § 1506(a) sets forth seven grounds for an annulment:

(a) The Court shall enter a decree of annulment of a marriage entered into under any of the following circumstances:
(1) A party lacked capacity to consent to the marriage at the time the marriage was solemnized, either because of mental incapacity or infirmity, or because of the influence of alcohol, drugs or other incapacitating substances;
(2) A party lacked the physical capacity to consummate the marriage by sexual intercourse and the other party did not, at the time the marriage was solemnized, know of the incapacity;
(3) A party was less than legal age and did not have the consent of his or her parents or guardian or judicial approval as provided by law;
(4) One party entered into the marriage in reliance upon a fraudulent act or representation of the other party, which fraudulent act or representation goes to the essence of the marriage;
(5) One or both parties entered into the marriage under duress exercised by the other party, or a third party, whether or not such other party knew of such exercise of duress;
(6) One or both parties entered into the marriage as a jest or dare; or
(7) The marriage is prohibited and void or voidable as provided in § 101 of this title.
[2] See Husband v. Wife, Del.Super., 262 A.2d 656, 657 (1970).
[3] See Saunders v. Saunders, Del.Super. 120 A.2d 160, 162 (1956).
[4] See Husband v. Wife, Del.Super., 257 A.2d 765, 767 (1969).
[5] See Anonymous v. Anonymous, Del.Super., 85 A.2d 706, 715 (1951); Morris v. Morris, Del.Super. 13 A.2d 603 (1940); Doe v. Doe, Del.Super., 165 A. 156 (1933); Williams v. Williams, Del.Super., 118 A. 638, 639 (1922).
[6] See Doe v. Doe, supra.
[7] See Morris v. Morris, supra.
[8] See Babis v. Babis, 75 A.2d 580 (1950).
[9] See Husband v. Wife, Del.Super., 262 A.2d 656 (1970).
[10] See Husband v. Wife, Del.Super., 257 A.2d 765 (1969).
[11] See Anonymous v. Anonymous, supra.
[12] See Morris v. Morris, supra.
[13] See Williams v. Williams, supra.
[14] See DuPont v. DuPont, Del.Supr. 90 A.2d 468, 475 (1952).
[15] See Williams v. Williams, supra at 639.
[16] See Anonymous v. Anonymous, supra.