## Todd, Appellant, *v.* Todd.

*Divorce—Act of May 8, 1854—Marriage procured by "fraud, force or coercion."*

Under the act of May 8, 1854, to authorize a divorce on the ground of fraud, it is necessary that the statement relied on should be untrue in fact and that the libelant should have been deceived by it; and where threats are relied upon to establish coercion, they must be such threats against the life, or to do bodily harm, as would overpower the judgment and coerce the will.

Argued April 6, 1892.    Appeal, No. 273, Jan. T., 1892, by appellant, from decree of C. P. No. 2, Phila. Co., June T., 1888, No. 23, dismissing libel in divorce. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

An answer having been filed, the case was referred to Thomas B. Reeves, as master; and he reported in favor of granting the divorce.    The facts appear in the following opinion of the court below, by PENNYPACKER, J., sustaining exceptions to the master's report.

"It is admitted that the parties to this proceeding in divorce had had illicit intercourse some time in January, 1885, and that they were married March 12, 1885. The libel charges that the respondent, did, by fraud, covin, deceit and duress, practiced on the libelant directly previous to the time of said marriage,

cause him to become a party to said marriage ceremony, by representing to him that she was pregnant, and with child as a result of illicit intercourse with libelant; and, by threats of bodily harm, made through her sons and other persons, and by anonymous letters, which libelant has since ascertained were written by the respondent, procured and induced the libelant against his own free will to become a party to said marriage ceremony.'

" The act of May 8, 1854, provides, inter alia, that a divorce may be granted ' where the alleged marriage was procured by fraud, force, or coercion, and has not been subsequently confirmed by the acts of the parties.'

" The grounds upon which the court is asked to grant this divorce are, that the respondent procured the marriage by fraud and by duress per minas. The alleged fraud consists in the fact that the respondent told the libelant before the marriage that she was pregnant in consequence of the intercourse between them. In order to constitute a fraud it is necessary that the statement should be untrue in fact and that the libelant should have been deceived by it. The respondent testified that she was pregnant at the time and subsequently had a miscarriage. There was nothing to corroborate her statement except the testimony of a woman who judged by appearance, and whose testimony was shaken by testimony upon the part of experts, that she could not form a correct conclusion in this way. The master has found as a fact that the statement was untrue. But was the libelant deceived by it? The intercourse occurred in January and the marriage took place March 12, following. It may well be doubted whether a woman within that period could herself have any certainty as to her condition. He nowhere says that he believed the statement to be true, and, in fact, the only inference to be drawn from his testimony is that he did not believe it. He says: ' About a week after the intercourse referred to by me she informed me that she was pregnant, and she persisted in stating this up to the time of the marriage. When she first told me she was pregnant I told her that could not be, because I thought she was too old.' There is no evidence of his reliance upon or even belief in the truth of her representation at the time of the marriage. It is doubtful whether such a representation, even if false and relied upon

in good faith, would constitute sufficient ground for granting
a divorce: Hoffman v. Hoffman, 30 Pa. 417.

"It is not alleged that there was any force used to compel
the marriage, and in order to justify a divorce under the stat-
ute, upon the ground of threats, they must be such threats
against the life or to do bodily harm as would overpower the
judgment and coerce the will. There must be such a mental
condition, as a result of the threats, that the libelant did not
and could not in reality consent to the marriage. It does not
appear, from the evidence, that the respondent made or knew
of any threats against the libelant. She had two sons who
were young men. One of them, at the commencement of a
dental college in Baltimore, on the 5th of March preceding the
marriage, pointed a cocked pistol at the head of a brother of
the libelant, and by this means obtained the diploma of the
libelant. At the same time he said that he would hunt the
libelant until he found. him and then shoot him. These facts
were communicated to the libelant. Dr. Winder, one of the
witnesses, testified that a son of the respondent said to him,
that 'if George Todd did not marry his mother he intended to
kill him;' and further, that he, witness, was 'perfectly satis-
fied that they would have killed him,' but whether or not this
was brought to the knowledge of the libelant does not appear.
The libelant was a man of twenty-seven years of age. He was
in Syracuse, New York, and the respondent and her sons were
in Baltimore. The libelant, in his examination in chief, said
nothing as to the effect of these threats upon him or upon his
actions in consenting to the marriage, but, on cross-examination,
he testified: 'Q. Do you say it was through any fear of bodily
harm that you were induced to marry the respondent? A. I
do.' This is the only evidence there is to prove the coercion
required by the statute. Dr. Winder wrote to the libelant,
promising to protect him from any violence on the part of the
sons of the respondent until the marriage ceremony would be
performed. The libelant went of his own will to Baltimore,
and the ceremony was performed by a clergyman in the pres-
ence only of Dr. Winder and a wife of one of the sons of the
respondent. No force and no threats were at that time made.

"Dr. Winder testified as to a contemporary conversation
with the libelant: 'He said either that he was going to, or

that he had married Mrs. Finney out of respect for Dr. Finney, and to remedy the wrong he had done him, and that he would never live with her as his wife, and that she would never see him again after the ceremony.   That he intended to apply for a divorce.   This conversation did occur prior to the marriage.'

" The libelant left the respondent immediately after the marriage and the same day wrote to her :

" ' Mrs. Finney : I cannot call you by another name although you have it.   I have this day done that which will save your family and yourself, and only did it for your sons Willie and Gordon, and your daughter's sake, not for yours.   You knew you were trying to do wrong, and the idea of you ever thinking of me is ridiculous.   I cannot express my contempt for you.'

" It seems, therefore, to be reasonably clear that, while there were threats of bodily harm made by the sons, the libelant was not coerced by these threats, but that he was induced to enter into the marriage in order to remedy the wrong and save her family from disgrace, in the hope of speedily securing a divorce.

" Neither of the grounds necessary to bring the case within the statute is made out, and the exceptions are, therefore, sustained."

The libel was subsequently dismissed.

*Error assigned* was the dismissal of the libel.

*De Forrest Ballou,* for appellant, cited Allen's Ap., 99 Pa. 196.

*Thos. A. Fahy,* not heard, for appellee.

PER CURIAM, April 25, 1892 :

While it may seem harsh to refuse the libelant a divorce, we are clearly of opinion that he has not made out a case within the act of assembly.   The learned judge of the court below has given sufficient reasons for his decree, which render a discussion of the case here unnecessary.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.