## Seibert v. Seibert.

*Divorce—Annulment of marriage—Misstatement as to age—Coercion— Acts of May 8, 1854, and April 14, 1859.*

1. There is nothing in the Act of April 14, 1859, P. L. 647, which authorizes a proceeding for the annulment of a marriage because of misstatement of the age of one of the parties, in reliance upon which the license was issued, or because of coercion exercised upon the wife.

2. A divorce will not be granted under the Act of May 8, 1854, P. L. 644, because of fraud, force or coercion on the part of the respondent in bringing about the marriage, where nothing more is shown than that respondent wrongfully stated his wife's age when procuring the marriage license in another state, and that she acquiesced in such statement.

Petition for annulment of marriage. C. P. Beaver Co., Sept. T., 1922, No. 37.

*M. J. Kraus,* for petitioner.

READER, J., Feb. 20, 1923.—The proceeding in the above stated case was instituted for the purpose of having a marriage celebrated between the petitioner and the respondent declared to be null and void.

It is alleged in the petition that on Jan. 16, 1922, the parties were married at Wellsburg, West Virginia, and that at the time the license for said marriage was procured in Brooke County, West Virginia, the age of the petitioner was stated as twenty-one years by the respondent, which statement was untrue and was known to be untrue by said respondent, the said petitioner being then under the age of seventeen years. It is further averred in the petition that the respondent, George W. Seibert, coerced the petitioner to falsify as to her age, and that she acquiesced in the false statement as to her age under duress imposed upon her by the respondent. It is further averred that the marriage celebrated as above stated was in violation of the laws of the State of West Virginia, by reason of the fact that the petitioner was then only sixteen years of age, and the further fact that neither her father nor mother gave consent to the marriage.

We consider, first of all, the nature of the proceeding, *i. e.,* to annul the marriage performed, as set out in the petition.

The only provision in the laws of Pennsylvania for such a proceeding is that contained in the Act of April 14, 1859, P. L. 647, as follows: "In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void, by reason of one of the parties thereto having a husband or wife living at the time, the Courts of Common Pleas shall have power to decree the said supposed or alleged marriage to be null and void, upon the application of an innocent or injured party; and the jurisdiction shall be exercised, and proceedings conducted according to the principles and forms which are or shall be prescribed by law for cases of divorce from the bond of matrimony."

The proceeding under this act is limited to the case of a marriage which is
3 D. & C.

absolutely void by reason of one of the parties thereto having a husband or wife living at the time of the celebration of the marriage. Though the marriage were void for some other reason, there seems to be no provision under our statutes for any proceeding to have it so declared. Thus, it has been held that when, at the time of the celebration of the marriage, one of the parties is insane, the marriage is absolutely void and may be so treated; but it has also been held that there is no jurisdiction in our courts to entertain a proceeding for the purpose of having such a marriage declared void, and thereby making a record of the fact of its invalidity: Newlin's Estate, 231 Pa. 312; Pitcairn v. Pitcairn, 201 Pa. 368; Snedden v. Snedden, 39 Pa. C. C. Reps. 222.

So far as we have been able to ascertain, therefore, there is no provision in the law of Pennsylvania for declaring a marriage void on the ground of the minority of the parties to the marriage, or either of them.

In Pennsylvania, however, while the requirement of the law is that minors shall not be granted a certificate to marry without the consent of the parent or guardian, the effect of the law is not to render a marriage void which is performed contrary to this requirement. The issuing of a license under such circumstances may be visited with the penalty provided by law, but the marriage is not thereby avoided: Beelman v. Roush, 26 Pa. 509; Fulkerson v. Day, 15 Phila. 638.

While these decisions are under an old act of assembly of the State of Pennsylvania, and not under the present act, relating to the issuing of marriage licenses in such cases, we think the same rule is applicable under the present statute.

The laws of West Virginia prohibit the issuing of a marriage license to minors without the consent of parents or guardians. They, however, declare a marriage celebrated contrary to this provision of the law as void only after it has been so declared by proper proceeding. The law of that state providing for the annulment of marriages seems to be much broader in its provisions than the Pennsylvania statute above quoted.

We are of the opinion, therefore, that the marriage in question in the present proceeding cannot be annulled under any provision of the laws of Pennsylvania for the reasons set out in the petition.

If we should disregard the form of the petition and treat it as a proceeding for divorce on the ground of fraud, force or coercion, it would be necessary, to sustain the proceeding, to bring it within the provisions of the Act of May 8, 1854, P. L. 644. This act provides, in part, as follows:

"In addition to the cases now provided for by law, it shall be lawful for the Courts of Common Pleas of this Commonwealth to grant divorces in the following cases:

"I. Where the alleged marriage was procured by fraud, force or coercion, and has not been subsequently confirmed by the acts of the injured party."

In construing the above provision of the Act of 1854, Judge Shafer, of Allegheny County, said, in the case of Ayres v. Ayres, 64 Pitts. L. J. 724: "As we understand it, the libel is filed under the provisions of the Act of 1854, which are that a divorce may be decreed 'where an alleged marriage is procured by fraud, force or coercion and has not subsequently been confirmed by the acts of the injured party.' Just what misrepresentations amount to such fraud as will invalidate a marriage under this act has not been well defined, but we are clearly of opinion that misrepresentations as to birth, name, rank, fortune, health, character or relationship do not constitute such fraud, but that the fraud must be in regard to some matter which concerns the marital relation itself."

Seibert *v.* Seibert.

As to the character of the coercion, or force, which will avoid a marriage under the provisions of the act, we call attention to the case of Todd *v.* Todd, 149 Pa. 60. On page 62, the lower court, by Judge Pennypacker, said: "It is not alleged that there was any force used to compel the marriage, and in order to justify a divorce under the statute upon the ground of threats, they must be such threats against the life or to do bodily harm as would overpower the judgment and coerce the will. There must be such a mental condition, as a result of the threats, that the libellant did not, and could not, in reality consent to the marriage."

The decision of the lower court in this case was affirmed by the Supreme Court upon the opinion of the court below.

Applying the principles decided in these cases to the case now before the court, we are of the opinion that the evidence does not establish such fraud, force or coercion on the part of the respondent in bringing about the marriage as would support a decree of divorce.

The substance of the testimony of the libellant is, that she was visiting in the City of Sharpsburg, Allegheny County, Pennsylvania, a short time before the marriage was celebrated, her home being near Ellwood, Pennsylvania; that the respondent, stating that he was going to take her to her home, accompanied her to the train, and that she first learned that they were not on their way to Ellwood when they left the train at the depot at Wellsburg, West Virginia. She further states that he said he was going to get married, and when something was said about her age, he said it would be the same as twenty-one. She states that her husband did the talking in obtaining the marriage certificate, and that he stated to the officer issuing the certificate that her age was twenty-one. The evidence also shows that the petitioner and respondent were not accompanied by any one else on their trip to Wellsburg, and that the parents of the petitioner were ignorant of the entire matter and never gave their consent to the marriage.

We find nothing, however, in all of the testimony which tends to establish fraud, force or coercion. The petitioner, of course, was not deceived or defrauded by any statement made by the respondent as to her age, as she knew her age then and could not be imposed upon by any statement made by the respondent as to it. There is no evidence of any other deceit practiced upon her except that possibly involved in taking her to Wellsburg instead of Ellwood. This, however, if it were fraud, was not fraud inducing the act of marriage itself, nor is there any evidence of force or coercion employed by the respondent in bringing about the act of marriage.

The only inference which could possibly be drawn from the evidence as to any coercion would be that of the respondent having coerced the petitioner into assenting to the statement as to her age. We doubt whether any inference of coercion, even in this respect, is justified by the evidence. It is quite clear, however, that there is no evidence of any coercion, or force, by which the petitioner was induced, or constrained, to enter into the marriage. We find nothing in the evidence in the case which would bring it within the provisions of the Act of 1854, above cited.

We are of the opinion, therefore, that no ground of divorce is established by the evidence in the case, and that there is no jurisdiction in the court to annul the marriage upon any of the grounds set out in the petition. For these reasons, we think the petition must be dismissed, at the cost of the petitioner.

Now, Feb. 20, 1923, the petition in the above entitled case is dismissed, at the cost of the petitioner, and the order prayed for therein is refused.

From F. H. Laird, Beaver, Pa.