## MARJORIE FLUHARTY *v.* GORDON S. FLUHARTY.

*(June 4, 1937.)*

488

HARRINGTON, J., sitting.

*William T. Broughall* for petitioner.

No appearance was entered for the defendant.

Superior Court for New Castle County, Petition for annulment of marriage, No. 5, March Term, 1937.

HARRINGTON, J., delivering the opinion of the Court:

Independent of statute, it has been aptly said that "Where the mind is overcome by fraud, by error, or duress, so that, in fact, it does not consent to an apparent marriage, the law will deem it to be no marriage; though, if after the thrall is broken, it then freely consents, no repetition

of the ceremony will be required to make it good." 1 *Bishop on Marriage and Divorce,* § 550; see, also, 1 *Bouv. Law Dict., Rawle's Third Revision, p.* 517; 9 *R. C. L.* 302.

But *Section* 3497 of the *Revised Code* of 1935 provides:

"A marriage may be annulled for any of the following causes existing at the time of the marriage: * * *

"(d) Fraud, force or coercion, at the suit of the innocent and injured party, unless the marriage has been confirmed by the acts of the injured party."

The petitioner does not claim that her father actually used, or threatened to use, physical force to induce her to marry the respondent; but she does claim that her marriage was wholly and entirely brought about by his "coercion," and should, therefore, be annulled by this court, as it was never ratified by cohabitation, or by any other voluntary act.

But, without considering whether a contract of marriage can be annulled on the ground of coercion, unless such coercion was by the other party to that contract, or with his knowledge, connivance or procurement (see *Shepherd v. Shepherd,* 174 *Ky.* 615, 192 *S. W.* 658; *Fratello v. Fratello,* 118 *Misc.* 584, 193 *N. Y. S.* 865; *Industrial Trust Co. v. Flaherty,* 7 *W. W. Harr.* (37 *Del.*) 94, 180 *A.* 583; *Smulski v. H. Feinberg Furniture Co.,* 8 *W. W. Harr.* (38 *Del.*) 451, 193 *A.* 585; *Schouler on Marriage, Separation and Divorce,* 1418; 19 *C. J.* 38; 9 *R. C. L.* 304) do the facts of this case justify the conclusion that the marriage attacked was induced solely by coercion on the part of the father of the petitioner?

Coerce means "compelled to compliance; constraint to obedience, or submission in a vigorous or forcible manner." *Cent. Dict.*

"Coercion," therefore, means "compulsion, forcible constraint; the act of compelling by force or arms" (*Cent. Dict.*) ; and compulsion is "the act of compelling or the state

of being compelled; the act of driving or urging by force or by physical or moral constraint; subjection to force." *Cent. Dict.*

Under the head of "Coercion; Constraint; compulsion; force," the statement is made in 1 *Bouv. Law Dict., Rawle's Third Revision, p.* 516, that "direct or positive coercion takes place when a man is by physical force compelled to do an act contrary to his will." In the same book, on page 517 the statement is, also, made that "implied coercion exists when a person is legally under subjection to another and is induced, in consequence of such subjection, to do an act contrary to his will."

At common law duress was of two kinds: where acts or contracts were induced by force and violence or by threats of force and violence of a certain aggravated nature, or by imprisonment. 1 *Bouv. Law Dict., Rawle's Third Revision, Duress, p.* 959; *Galusha et al. v. Sherman,* 105 *Wis.* 263, 81 *N. W.* 495, 47 *L. R. A.* 417; 1 *Blackstone's Com.* 130; see, also, *Shepherd v. Shepherd,* 174 *Ky.* 615, 192 *S. W.* 658; *Todd v. Todd,* 149 *Pa.* 60, 24 *A.* 128, 17 *L. R. A.* 320.

■ There are cases that would seem to indicate that the word "coercion," as used in a similar statute relating to force and coercion, but not to fraud, had somewhat the same meaning as duress by force and violence or by threats of force and violence (see *Todd v. Todd,* 149 *Pa.* 60, 24 *A.* 128, 17 *L. R. A.* 320; *Shepherd v. Shepherd,* 174 *Ky.* 615, 192 *S. W.* 658), but from the definition of the word it would seem that it might sometimes have a broader meaning that the word duress, certainly as defined at common law. 1 *Bouv. Law Dict., Rawle's Third Revision, supra, Duress, p.* 959; 1 *Blackstone's Com.* 130; *Galusha v. Sherman,* 105 *Wis.* 263, 81 *N. W.* 495, 47 *L. R. A.* 417.

But even conceding that to be true, and that there may perhaps be extreme cases of coercion where there is neither

actual force and violence or threats of its immediate use, to prove that charge the conduct of the party charged with coercion certainly must be of such nature as to actually over-ride the judgment and will of the other party relying on it to invalidate the contract made. *Shepherd v. Shepherd,* 174 *Ky.* 615, 192 *S. W.* 658; *Todd v. Todd,* 149 *Pa.* 60, 24 *A.* 128, 17 *L. R. A.* 320.

A marriage celebrated according to the forms of law is *prima facie* valid, and public policy requires that it shall not be lightly set aside. To annul a marriage on the ground of coercion, the petitioner's evidence must, therefore, be clear and convincing. *Bassett v. Bassett,* 9 *Bush* (*Ky.*) 696; 20 *Ann. Cas.* 1376, *note.*

Notwithstanding Bouvier's definition of implied coercion, the mere commands of a father, based on the relation of parent and child, do not show the necessary legal subjection of one person to another to constitute coercion, even of that nature. 1 *Bouv. Law Dict., Rawle's Third Revision, p.* 517; and no matter what the facts were, or what he thought they were, the mere fact that the petitioner's father urged, or even commanded her to marry the respondent, does not amount to such coercion as to justify this court in annulling a contract of that nature. 1 *Bouv. Law Dict., Rawle's Third Revision, p.* 517.

The petition is, therefore, dismissed.