JACK SAUNDERS, Plaintiff, v. RUTH A. SAUNDERS, Defendant.

(*January* 23, 1956.)

HERRMANN, J., sitting.

*H. James Conaway, Jr.* (of Morris, James, Hitchens and Williams) for the plaintiff.

*John M. Bader* (of Balick and Bader) for the defendant.

Superior Court for New Castle County, No. 969, Civil Action, 1954.

HERRMANN, J.:

The plaintiff seeks annulment of his marriage to the defendant on the ground that the defendant failed to comply with the Statute requiring an applicant for a marriage license to report a prior marriage and divorce.

The Statute involved appears at 13 *Del. C.* § 101.[1] By § 101(a), it is provided that certain marriages are prohibited

---

[1]The parties' application for a marriage license was made in 1943. The Statute involved then appeared at 1935 *Code* ¶ 3485 from which the provisions of the 1935 *Code*, 13 *Del. C.* § 101, were derived. Since there is no substantial difference between the two *Code* provisions insofar as this case is concerned, and since there is far greater clarity in the form of the 1953 *Code* provision, references herein will be to the 1953 *Code*.

and void *ab initio*. By § 101(b), other types of marriages are prohibited and each such marriage is stated to be "void from the time its nullity is declared by a court of competent jurisdiction at the instance of the innocent party". Included in the latter category of voidable marriage is a marriage between paupers, a marriage in which one of the parties is an epileptic or of "any degree of unsoundness of mind", a marriage involving a party who is venereally diseased, an habitual drunkard, a confirmed user of narcotics or one who is on probation or parole and who does not have consent to marry from the duly designated authority. Also included in the ban of this Statute, and declared to be voidable at the instance of the innocent party, is a marriage in which either party is, 13 *Del. C.* § 101(b) (6):

"(6) Divorced, unless a certified copy of the divorce decree (last decree if he has been divorced more than once), or a certificate of such divorce from the clerk of the court granting the divorce is filed with the Clerk of the Peace to whom he makes application for a marriage license, and unless such person may in other respects lawfully marry; and if such decree or certificate cannot be obtained, the Resident Judge of the county where such license is desired, or the person designated by the Resident Judge to grant such certificates as may be accepted under the provisions of this subdivision, may grant a certificate of the facts as stated by the applicant and the certificate may, for the purposes of this chapter, be accepted in lieu of a certified copy of a divorce decree".

The Statute makes it a criminal offense to enter into any such prohibited marriage and declares it to be perjury knowingly to give false information in applying for a marriage license. See 13 *Del. C.* §§ 102, 127.

It has been decided that this Court has jurisdiction to grant an annulment of marriage under the Statute here involved as well as under the general Annulment Statute. See *Doe v. Doe*, 5 *W. W. Harr.* 301, 165 *A.* 156; compare 13 *Del. C.* §§ 1501, 1551.

The material facts in this case are undisputed. The defendant was married to Ernest Hodge in 1919 in North Carolina. That marriage was terminated by a divorce granted in Georgia, effective August 27, 1935. On June 11, 1935, prior to the effective date of the divorce, the defendant participated in a marriage ceremony with William Aiken in North Carolina. Aiken died in 1939.

In 1943, the plaintiff and the defendant were married here under a license obtained from a Justice of the Peace.[2] In applying for the marriage license, it appears that the defendant stated that she was previously married to Aiken in 1933 and that the marriage terminated by Aiken's death in 1939. There is a space on the application form[3] designated "If the marriage terminated by divorce, give place and date; if divorced more than once give information on last divorce". The word "No" was inserted in this space for divorce data. Since a marriage license application is in the form of an oral deposition, it is assumed that the space on the form was filled in by the Justice of the Peace after the specified question was put to "each party in the presence and hearing of the other".[4]

The parties lived together as husband and wife from 1943 to 1951 when they separated. During the last five years of their cohabitation, the plaintiff knew that the defendant was a divorcee. During all of that period, he knew that she had been married to Ernest Hodge, that she had married daughters fathered

[2]See 13 *Del. C.* §§ 108, 109, 114.

[3]See 13 *Del. C.* § 122.

[4]By reason of the conclusion hereinafter reached, it is not necessary to consider (1) whether there is a presumption that the Justice of the Peace or the Clerk of the Peace asked the questions in the application clearly and comprehensively so that the severe statutory sanctions might be fairly imposed upon one whose answer makes him a violator of the law and a guilty party to a prohibited marriage; or (2) whether the questions prescribed by the Statute for marriage license applications are so vague and ambiguous as to be misleading concerning the marriage to which they are directed if the applicant has had more than one previous marriage; or (3) whether one of the applicants is an "innocent party" when he or she hears the other applicant make a statement which is known to be false.

by Hodge and that she and Hodge had been divorced. Notwithstanding such knowledge from about 1946 on, the plaintiff continued full marital relations with the defendant until they separated in 1951. This action for annulment was brought after the plaintiff had been ordered by the Family Court to support the defendant and, later, to pay arrearages under the support order.

I am of the opinion that the plaintiff may not now repudiate his marriage with the defendant because he has ratified and confirmed it. This conclusion is impelled by sound legal principles as well as by a rule of reason.

The types of marriages prohibited by 13 *Del. C.* § 101(b) are voidable, not void. Voidable marriages are valid and binding unless and until declared otherwise by judicial decree. *Anonymous v. Anonymous,* 7 *Terry* 458, 85 *A.* 2d 706, 715. By the terms of the Statute, the dissolution of such voidable marriage runs from the time of judicial action. In reality, therefore, there is little difference between a divorce and the annulment of a voidable marriage; and, in either event, the public policy of this State requires that a consummated marriage shall not be lightly dissolved or set aside. See *Anonymous v. Anonymous, supra; Fluharty v. Fluharty,* 8 *W. W. Harr.* 487, 193 *A.* 838; *Williamson v. Williamson,* 9 *Terry* 277, 101 *A.* 2d 871.

It is manifest that the Statute here involved, requiring the revelation of a prior divorce, exists for the purpose of protecting innocent parties from being deceived in this, a matter which, for religious reasons or otherwise, is of utmost importance to many persons when contemplating marriage. I can conceive of no other public interest or policy involved. Thus, the right of the "innocent party" to repudiate the marriage under 13 *Del. C.* § 101(b) (6) is a wholly private and personal right. The personal nature of the right becomes clear when it is recalled that the marriage remains valid and binding in the eyes of the law unless and until the "innocent party" moves to exercise the right.

■ Like other personal rights, the right granted by 13 *Del. C.* § 101(b) (6) may be waived. Such waiver occurs when, as here, the "innocent party" voluntarily continues cohabitation and ratifies and confirms the marriage with knowledge of the prior divorce, the disclosure of which is the sole purpose of the Statute relied upon. Compare 3 *Nelson Divorce and Annulment* (2d Ed.) §§ 31.52 and 31.53.

The plaintiff contends that confirmation of the marriage may not be interposed as a defense to an action for annulment under 13 *Del. C.* § 101(b) (6). This contention is based upon a three-fold argument: (1) 13 *Del. C.* § 101(b) (6) does not state that confirmation of the marriage destroys the statutory right to attack it; (2) on the other hand, the general Annulment Statute, 13 *Del. C.* § 1551, providing the usual and ordinary grounds for annulment, expressly states that a marriage may be annulled for fraud existing at the time of the marriage "unless the marriage has been confirmed by the acts of the injured party"; and, therefore, (3) the doctrine of *expressio unius est exclusio alterius* impels the conclusion that confirmation is not a bar in a proceeding brought under § 101(b) (6) because that Statute is silent.

■■ I find the plaintiff's contention to be without merit. Whatever force his argument may seem to have at first glance is completely dissipated by acknowledgement of the purpose of § 101(b)(6) and the public policy to be served thereby. Moreover, § 101(b) (6) is akin to § 1551(4), the fraud provision of the general Annulment Statute, and the former must be considered and construed in the light of the latter. The two Statutes must be read together so that they will be consistent and so that they may be harmonized, if possible. Compare *St. Stanislaus Kostka Church v. Mayor and Council*, 9 *Terry* 411, 105 *A.* 2d 596. By 1551(4), the Legislature provided that a marriage procured by fraud going to the very essentials of the marriage relationship may be annulled if the marriage was not confirmed by the injured party. See *Williams v. Williams*, 2 *W. W. Harr.* 39, 118 *A.* 638, 639; *Morris v. Morris*, 1 *Terry* 480, 13 *A.* 2d 603.

Fraud as to a prior marriage and divorce does not go to the essentials of the marriage relationship and, therefore, such fraud is something less than the fraud referred to in § 1551(4). See *Anonymous v. Anonymous, supra; Trask v. Trask,* 114 *Me.* 60, 95 *A.* 352; 3 *Nelson Divorce and Annulment* (2d Ed.) § 31.41. Thus, it appears that § 101 (b) (6) provides a supplemental kind of fraud, as a ground for annulment, not included in the general Annulment Statute.

 Since confirmation of the marriage bars annulment for fraud of the higher degree contemplated in § 1551(4), it would be unreasonable to conclude that the Legislature did not intend the same bar to exist for fraud of the lesser degree contemplated in § 101(b) (6). The interrelationship of the two Statutes, and the necessity for reasonable consistency to permit their reconciliation, requires that the defense of confirmation, expressed in § 1551(4), be deemed to be implied in § 101 (b) (6). There appears to be no good reason for thinking that the Legislature intended to exclude from proceedings under § 101 (b) (6) the concept of waiver by condonation or confirmation which is so firmly embedded in other phases of our law of divorce and annulment.

It is held that, because he confirmed the marriage by voluntarily cohabiting with the defendant after knowledge of her prior divorce, the plaintiff waived whatever rights he may have had under 13 *Del. C.* § 101 (b) (6) to repudiate his marriage to the defendant. He is not entitled to have the marriage annulled and, therefore, the decree will be denied.