Anthony V. FIDANCE, Jr., Plaintiff Below,
Appellant,

v.

Matthew J. GIORDANO, Defendant Below,
Appellee.

Supreme Court of Delaware.

Dec. 20, 1967.

Courtney H. Cummings, Jr., of Killoran & Van Brunt, Wilmington, for appellant.

William J. Wier, Jr., of Connolly, Bove & Lodge, Wilmington, for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

PER CURIAM:

After a careful review of all the evidence, we are of the opinion that the judgment below must be affirmed for the following reasons:

1. There are ambiguities in the written agreement, and the Chancellor was accordingly justified in admitting oral evidence.

2. There was ample evidence to justify the Chancellor's basic ruling that appellant paid $6000 to appellee to purchase a one-half interest in the partnership; that the "leasehold improvements" were incorrectly included in the balance sheet because the accountant was unacquainted with the facts; and that this alleged asset was not a firm asset. No other item in the account is presently questioned.

3. The refusal of interest and counsel fees was, under the facts of this case, well within the Chancellor's discretion and does not constitute reversible error.

The judgment below will be affirmed.

Alexander L. GLISSON, Jr., Plaintiff Below,
Appellant,

v.

Evelyn B. GLISSON, Defendant Below,
Appellee.

Supreme Court of Delaware.

Dec. 20, 1967.

Bruce M. Stargatt and William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for appellant.

Robert B. Walls, Jr., Wilmington, for appellee, by appointment.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal from the denial of a divorce. The divorce was sought under 13 Del.C. § 1522(10), which reads as follows:

"§ 1522. Grounds for divorce from the bonds of matrimony

"(10) When either the husband or wife has been adjudged mentally retarded, epileptic, or a chronic or recurrent mentally ill person, and has been under the supervision or care of an institution for mental diseases, during a period of five

years. In addition to complying with the requirements as to jurisdiction, residence, summons and service, as provided in this chapter, the petitioner shall request the Superior Court to appoint a commission of five persons to inquire into the respondent's mental and physical condition. One member of the commission shall be the State Psychiatrist, one, a licensed physician who has practiced medicine in the State for at least five years, one, an attorney-at-law who has practiced law in the State for at least five years, and the other two, laymen of good character who have been residents in the State for at least five years. If the report of the commission, so appointed, shall be that the person is a mentally retarded, epileptic, or a chronic or recurrent mentally ill person, and has been under the supervision or care of an institution for mental diseases for a period of five years, or more, then the Superior Court may grant a divorce a vinculo matrimonii, making, however, in its discretion, such an order upon the petitioner for the support, care and treatment of the mentally retarded, epileptic, or chronic or recurrent mentally ill person, as it deems fitting and proper."

In Jacobs v. Jacobs, 6 Terry 544, 76 A.2d 742, the Superior Court had before it 1935 Code, § 3499, amended by 43 Laws, Ch. 206, which, with the exception of the phrase "insane person" for the phrase "mentally ill person", was identical with § 1522(10).

■ It was held that divorce on this ground may be granted provided (1) that the defendant is insane; (2) that he has been so adjudged; (3) that he has been under the care and supervision of an institution for a period of at least five years, and (4) that a commission appointed by the court has reported that the defendant is insane at the time the report is made. It was further held that the five-year period under care of a mental institution need not immediately precede the filing of the complaint.

■ This Court has never heretofore had occasion to consider the proper meaning of 13 Del.C. § 1522(10). While the decision in the *Jacobs* case, a decision of the Superior Court, is not binding on us, we nevertheless approve it as a correct statement of the law. We think its rule controls the case before us.

■ In the case at bar it was held that the requirement of the statute that the defendant be "adjudged" mentally ill can be met only by an adjudication pursuant to a writ *de lunatico inquirendo*. Accordingly, the complaint was dismissed in the absence of such an adjudication.

We disagree with the ruling of the trial judge. In support of his ruling, he cited In re Wilson, 9 Del.Ch. 332, 82 A. 695, and Poole v. Newark Trust Co., 1 Terry 163, 8 A.2d 10, but we think the cited cases do not require that 13 Del.C. § 1522(10) be construed to mean that the required adjudging of mental illness may be made only by a writ *de lunatico* proceeding.

In re Wilson was a holding that Chancery has jurisdiction to issue a writ *de lunatico* to inquire into the sanity of a nonresident who owned real estate in Delaware. Poole v. Newark Trust Co. was a holding that the appointment of a trustee for an alleged insane person confined in the State Hospital without the issuance of a writ *de lunatico*, pursuant to the statute now appearing as 12 Del.C. § 3701, was not a conclusive adjudication of insanity constructively binding on all the world.

These two decisions were primarily concerned with the protection of the insane person's property rights in relation to the acts of others. We think that they have no necessarily compelling effect in determining the meaning of 13 Del.C. § 1522(10). At most, in that connection, they stand for the proposition that insanity can be established and adjudicated by proceedings had by reason of the issuance of a writ *de lunatico inquirendo*. The *Poole* case would seem to stand for the further proposition that only by the issuance of the writ may an adjudi-

cation of insanity constructively binding on all the world, be had.

It is to be noted that 13 Del.C. § 1522(10) uses the word "adjudged" rather than the word "adjudicated." This choice of language has significance for there is a difference in meaning. The meaning of "adjudge" is to decide or determine, but that decision is not a judgment. 1 Bouv.Law Dict., Rawle's Third Revision, p. 137. On the other hand, the meaning of "adjudicate" is to render a judgment in a case by the exercise of judicial power. 1 Bouv.Law Dict., Rawle's Third Revision, p. 137.

This difference in meaning makes it clear to us that the adjudging of mental illness required by 13 Del.C. § 1522(10) may be something other than an adjudication by a *de lunatico* proceeding. The statute's requirement may be satisfied by something less than such an adjudication.

A person may be adjudged to be suffering from mental and nervous disease, we think, by the procedure prescribed by 16 Del.C. § 5124. If it is recommended to the Board of Trustees that a patient be permanently admitted to the Delaware State Hospital, then § 5124 provides that, if requested by a relative, a jury of six persons, or, in the absence of a request for a jury, a commission of two qualified physicians, shall determine whether or not the patient is suffering from a mental or nervous disease. Upon receipt of a report to that effect, the Board of Trustees may commit the patient to the hospital. § 5124(e) provides that the patient, or any relative of the patient, shall have the right of appeal to the Court of Chancery from the findings of the jury or commission.

■ Unquestionably, a finding made under 16 Del.C. § 5124, is a decision or determination of mental or nervous disease. As such, under the definition set forth above, the patient has been so adjudged. If, therefore, proof is made to this effect, the requirement of 13 Del.C. § 1522(10) that the defendant be adjudged to be suffering from mental illness has been satisfied.

In the record before us the only proof that the defendant at bar has been adjudged to be suffering from mental or nervous disease is a letter from the Assistant Superintendent of the Delaware State Hospital which sets forth the following information:

"1. Mrs. Glisson was committed to Delaware State Hospital on 8/27/1958

" Left Hospital on Convalescent Leave on 12/17/1958

" Returned to Hospital on 4/27/1960

" Left Hospital on Convalescent Leave on 9/22/1960

" Discharged as 'Improved' on 7/21/1961

"2. Mrs. Glisson re-admitted to Delaware State Hospital as a voluntary patient on 12/31/1962

" Mrs. Glisson re-committed to Delaware State Hospital on 1/4/1963

" Left Hospital on Convalescent Leave on 3/12/1963

" Returned to Hospital on 12/10/1963"

——◆——

■ While presumably the Hospital authorities complied with the duties imposed on them by 16 Del.C. § 5124, the exhibit does not show affirmatively that this statute was complied with. We think, therefore, that there has been a failure of proof in this re-

spect. Because of the presumption, however, that the authorities have properly discharged duties cast upon them by law, we will remand the cause to determine this as a fact, and if that be the fact, with instructions to vacate the judgment of dismissal and enter a divorce decree.

■ We point out furthermore that it is quite apparent that the requirement of five years' supervision by a mental institution has been satisfied, even though it was not an uninterrupted period of five years. As we pointed out, under the rule of the *Jacobs* case, the period is not required to be for the five years next preceding the filing of the complaint. It follows, therefore, that the interruption in supervision from July 21, 1961 to December 31, 1962 is immaterial since the defendant has been under supervision for a total period of more than five years.

The cause is remanded for further proceedings in accordance with this opinion.