WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Guardian of Florence C. Trimingham, an infirm person, also known as Florence T. Hahn, Plaintiff below, Appellant,

v.

P. James HAHN, Defendant below, Appellee.

Florence C. TRIMINGHAM, an infirm person, also known as Florence T. Hahn, by her Next Friend, Wilmington Trust Company, a corporation of the State of Delaware, Guardian of Florence C. Trimingham, an infirm person, Plaintiff below, Appellant,

v.

P. James HAHN, Defendant below, Appellee.

Supreme Court of Delaware.

April 17, 1968.

Richard J. Baker, Wilmington, for plaintiffs below, appellants.

Joseph Donald Craven, Wilmington, for defendant below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

The appellant, Wilmington Trust Company, as guardian of Florence C. Trimingham, also known as Florence T. Hahn, an infirm person, filed a suit in Superior Court against the appellee, P. James Hahn, for annulment of the marriage of the infirm person and the appellee. The appellant also filed a similar action as next friend of the infirm person. The Court below granted motions to dismiss both cases, upon the ground that the appellant has no standing, either as guardian or as next friend, to bring the actions. By these consolidated appeals, the appellant seeks a reversal of that holding.

The appellant was appointed guardian under the provisions of T. 12 Del.C. § 3914. Subparagraph (a) of that section reads as follows:

Whenever any person not mentally ill, a resident in this State, by reason of advanced age or mental infirmity or physical incapacity is unable properly to manage and care for his property, and in consequence thereof is in danger of dissipating or losing such property, or of becoming the victim of designing persons, such person, his mother, father, brother, sister, husband, wife, child, next of kin, creditor, debtor, any public agency or, in the absence of such person, or persons, or public agency, or their refusal or inability to act, any other person, may file in the Court of Chancery of the county in which such aged, mentally infirm or physically incapacitated person resides, his petition, under oath, setting forth the facts, praying the Court to adjudge that such person is unable properly to manage and care for his property, and requesting the appointment of a guardian of the property of such person."

Subparagraph (d) is in the following language:

"In all matters relating to the appointment, qualification, duties, powers, liability to account, and distribution of property at the recovery or death of the ward, such guardian shall be governed by all of the applicable provisions of law and rules of Court relating to the management of the estates of mentally ill persons."

Another provision provides that from the time of the appointment, the person whose property is under guardianship shall be under disability to contract *with regard to the property* forming the subject matter of the guardianship during the pendency thereof.

The guardian's appointment was made upon the petition of two first cousins once removed of the ward. She was then unmarried, her former husband having died about two years earlier. The petition averred that she was not mentally ill, but was mentally infirm as the result of arteriosclerosis, was unable properly to manage her property and was in danger of becoming the victim of a designing person; that her next of kin was a nephew of the half-blood[1] who resided in California; that her estate consisted of her home and considerable personal property, estimated to be worth more than $200,000.00. She was then about 83 years old. A rule was duly issued upon the petition and served upon the alleged infirm person. She did not appear or answer to the rule. The appointment of appellant as guardian was made on January 10, 1966.

At that time, the appellee was a single man about 31 years of age, who lived

---

1. He has since died, leaving two children.

next door to the ward. In the present proceedings, it is alleged that he was aware of the guardianship appointment at the time it was made. On February 23, 1966, according to the complaints, he took the ward to Elkton, Maryland, and applied for a marriage license, which was issued two days later. On March 7, 1966, he again took the ward to Elkton, where they were married by a Deputy Clerk of the Cecil County Circuit Court.

The petitions for annulment allege that the marriage is void because the ward did not at that time have sufficient mental capacity to enter into a marriage contract. They also charge that fraud was committed upon her by the appellee. This latter allegation simply states that the ward was induced by defendant to enter into the marriage when he knew she did not have the capacity to make said contract. This count avers no facts in addition to mental illness other than his knowledge thereof; it is in effect a restatement of the mental illness ground. We therefore shall not discuss it as an independent theory.

The issue before us is not whether the marriage is valid; the problem is whether a guardian of the property or a next friend can maintain an annulment proceeding on behalf of the ward when the ground of action is the ward's mental illness existing at the time of marriage.

By virtue of the Chancery proceedings leading up to the appointment of the guardian, there was a judicial finding that the ward was not mentally ill, but was mentally infirm. Conceivably, her mental condition may have deteriorated in the two-month period between the appointment and the marriage to the point where it could be deemed mental illness. Nevertheless, no such finding has been made. Had these cases been tried, that problem would have been an issue to be determined, and appellant suggests that these cases ought to be tried in order that that issue may be resolved. The difficulty is, of course, that the cases cannot be tried unless the Court below has jurisdiction to do so.

The Superior Court has no inherent power to grant annulments. DuPont v. DuPont, 8 Terry 231, 90 A.2d 468. Its jurisdiction is derived from T. 13 Del. C. Ch. 15, and its powers in this regard are limited by the provisions of that chapter. The grounds upon which it may grant annulments are listed in § 1551. They include (1) incurable physical impotency, if unknown to the plaintiff at the time of the marriage; (2) consanguinity at the suit of either party; (3) a prior existing marriage at the suit of either party; (4) fraud, force or coercion, at the suit of the innocent party, unless that party has confirmed the marriage; (5) "mental illness of either party, at the suit of the other, or at the suit of the committee of the lunatic, or of the lunatic on regaining reason, unless such lunatic, after regaining reason, has confirmed the marriage. Where the party compos mentis is the applicant, such party shall have been ignorant of the other's mental illness at the time of the marriage, and shall not have confirmed it subsequent to, the lunatic's regaining reason".

It will be noted that subparagraph (5) of § 1551 expressly states who may bring the action when mental illness is the basis therefor. It may be brought by the spouse who is not mentally ill, or by the lunatic after regaining reason, or by the "committee of the lunatic". We think this statute, by listing those who may bring the suit, excludes all others. Such was the view taken in Walter v. Walter, 217 N.Y. 439, 111 N.E. 1081, wherein the doctrine of *expressio unius est exclusio alterius* was applied.

Obviously the guardian cannot prosecute this action unless it is the "committee of the lunatic". The guardian may not be so classified under our law. There of course has been no finding that the ward is mentally ill; the Chancellor found

in 1966 that she was not mentally ill, but was mentally infirm.[2] At the time the Legislature adopted the annulment statute in 1907 (24 L. of D. Ch. 221), the term "committee of the lunatic" could have referred only to a trustee appointed under the forerunner of T. 12 Del.C. Ch. 37, which deals solely with mentally ill persons; the provisions for a guardian for the property of infirm persons were not enacted until 1951 (48 L. of D. Ch. 365). Appellant contends that the latter act impliedly amended the annulment statute and brings the guardian within the term "committee of the lunatic" by conferring upon the guardian all the powers and duties of a trustee. This is not correct. In contrast to the powers of such trustee, those of a guardian are limited to the property of the ward and do not reach the ward's person. In our opinion, the phrase "committee of the lunatic" includes only a trustee of a mentally ill person.

 In Delaware, marriage is primarily a personal status, even though it secondarily affects certain property rights. Cohen v. Cohen, 3 Boyce 361, 84 A. 122; Saunders v. Saunders, 10 Terry 515, 120 A.2d 160. Thus an action for annulment fundamentally concerns the personal status of the ward. Accordingly we must disagree with the theory that the guardian's interest in the property of the ward is sufficient to support its right to bring an annulment action.[3]

Appellant cites Glisson v. Glisson, Sup., Storey, 237 A.2d 393. We see no resemblance between the two cases. *Glisson* had nothing whatever to do with the

standing of parties, which is the only issue before us in this case. Furthermore, in *Glisson*, which was a divorce case, there was no applicable statute comparable to T. 13 Del.C. § 1551. Finally, the defendant in that case had been "adjudged" mentally ill, pursuant to the procedure in 16 Del.C. § 5124; in this case, the ward was judicially held *not* to be mentally ill.

 Appellant also contends that the suit may be prosecuted by a next friend or guardian *ad litem,* pursuant to Superior Court Rule 17(c), Del.C.Ann. Such a representative cannot be considered the equivalent of a trustee or "committee of the lunatic". The sole function of such representative is to control and manage the action; he is not a party to the suit. The real party is the person for whose benefit the suit is prosecuted. 1 Woolley on Delaware Practice 81; 3A Moore's Federal Practice 908. No jurisdiction exists in the Superior Court until an action has been instituted by a person authorized to bring it. The Court cannot, by the device of appointing a next friend or guardian *ad litem,* create jurisdiction which otherwise does not exist. Appellant's suggestion is unacceptable.

We are obliged to affirm the judgments entered below, although we do so with reluctance. The annulment statute needs legislative attention and revision in this connection. In the present case, for example, if the allegations are true, relief should be available; if the allegations are untrue, the appellee should be judicially absolved of the charges made against him.

The judgments below will be affirmed.

2. Under T. 1 Del.C. § 302, the term "mentally ill" incudes every "idiot, lunatic person or person *non compos mentis*".

3. Nothing herein is intended to apply to any ground for annulment which renders the marriage absolutely void, rather than merely voidable; the rule may or may not be the same with respect to the two types of grounds. Obviously, both fraud and mental illness render the marriage voidable because the statute expressly permits ratification in such instances. Cf. Anonymous v. Anonymous, 7 Terry 458, 85 A.2d 706.