IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ISABELLE KELLER-MINUS, | § | |
| | § | No. 374, 2018 |
| Petitioner Below, Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| ANDREW PAKSTON and SETH | § | File No. CN18-01307 |
| PAKSTON, | § | CPI No. 18-01942 |
| | § | |
| Respondents Below, Appellees. | § | |

Submitted: January 25, 2019
Decided: February 25, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

# O R D E R

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     The *pro se* appellant, Isabelle Keller-Minus, appeals from a Family Court order dismissing her petition to void the 1969 marriage of her father, Peter Keller,[1] and his second wife, Lydia Pakston. The appellees are Lydia's sons and Peter's stepsons.

(2)     Peter married Keller-Minus's mother, Sarah Keller, in 1939. They separated in February 1969. Peter married Lydia on July 11, 1969, in Delaware. Peter died in 1987. Sarah died in 1991. Lydia died on October 30, 2015.

---

[1] Pseudonyms have been assigned to the individuals discussed in this order. For clarity, we use first names to refer to some of the individuals discussed. We intend no disrespect.

(3)    In her petition to void Peter and Lydia's marriage, Keller-Minus alleged that Peter claimed that after his separation from Sarah, and before marrying Lydia, he had gone to Mexico and obtained a divorce. Keller-Minus contended that there is no evidence that Peter actually obtained a divorce in Mexico and that, even if he did, that divorce was invalid or legally insufficient to allow Peter to remarry under Delaware law. She therefore argued that Peter and Lydia's marriage should be declared void under 13 *Del. C.* § 101(b).

(4)    After briefing and a telephonic hearing, the Family Court dismissed the petition. The Court held that Keller-Minus lacked standing to seek to void Peter and Lydia's marriage and that her petition was barred by the doctrine of laches. Keller-Minus now appeals to this Court.

(5)    We agree that Keller-Minus lacks standing to seek to void Peter and Lydia's marriage. 13 *Del. C.* § 101(b) provides:

> A marriage is prohibited, and is void from the time its nullity is declared by a court of competent jurisdiction at the instance of the innocent party, if either party thereto is . . . (6) Divorced, unless a certified copy of the divorce decree (last decree if such person has been divorced more than once) or a certificate of such divorce from the clerk of the court granting the divorce is inspected by the clerk of the peace to whom such person makes application for a marriage license, and unless such person may in other respects lawfully marry; and, if such decree or certificate cannot be obtained, the Resident Judge of the county where such license is desired or the person designated by the Resident Judge to grant such certificates as may be

2

accepted under this paragraph may grant a certificate of the facts as stated by the applicant and the certificate may, for the purposes of this chapter, be accepted in lieu of a certified copy of a divorce decree . . . .

Thus, Section 101(b) provides only the "innocent party"—here, Lydia[2]—with standing to petition a court to void the marriage on grounds of insufficient documentation of the other party's divorce. This is consistent with the principle that "[i]n Delaware, marriage is primarily a personal status, even though it secondarily affects certain property rights."[3] It is also consistent with the principle that the "types of marriage prohibited by 13 *Del. C.* § 101(b) are voidable, not void" and may be confirmed by the innocent party.[4] Here, Keller-Minus does not allege that Lydia was unaware of Peter's divorce, yet Lydia never sought to void the marriage and remained married to Peter until his death more than eighteen years later.[5]

---

[2] The term "party" as used in Section 101(b) refers to the spouses—that is, the parties to the purportedly voidable marriage—and not to any other potential litigants. *Cf. Wilmington Trust Co. v. Hahn*, 241 A.2d 517 (Del. 1968) (discussing standing under annulment statute and stating that annulment based on mental illness could be sought by the "spouse who is not mentally ill" where the statute provided for annulment on grounds of "mental illness of either party, at the suit of the other").

[3] *Id.* at 521. *See also Saunders v. Saunders*, 120 A.2d 160, 163 (Del. Super. Ct. 1956) ("It is manifest that the Statute here involved, requiring the revelation of a prior divorce, exists for the purpose of protecting innocent parties from being deceived . . . . Thus, the right of the 'innocent party' to repudiate the marriage under 13 *Del. C.* § 101(b)(6) is a wholly personal and private right. The personal nature of the right becomes clear when it is recalled that the marriage remains valid and binding in the eyes of the law unless and until the 'innocent party' moves to exercise the right.").

[4] *Saunders*, 120 A.2d at 163.

[5] *See id.* at 164 ("[B]ecause he confirmed the marriage by voluntarily cohabiting with the defendant after knowledge of her prior divorce, the plaintiff waived whatever rights he may have had under 13 *Del. C.* § 101(b)(6) to repudiate his marriage to the defendant.").

(6) The general annulment statute, 13 *Del. C.* § 1506, does provide standing to a child of either spouse to seek annulment under certain circumstances. But Keller-Minus's petition was untimely under that provision. Under Section 1506(b)(4), a child of either spouse may seek annulment of a marriage that is voidable under Section 101 "at any time prior to the death of either party or prior to the final settlement of the estate of either party and the discharge of the personal representative, executor or administrator of the estate, or prior to 6 months after an order of distribution is made under Chapter 23 of Title 12." Peter died in October 1987. The appellees have indicated that his estate was settled by 1989. Given that more than thirty years have passed since Peter's death and Keller-Minus alleges no facts indicating that any aspect of his estate administration or distribution remains open, we conclude that Keller-Minus's petition was not timely under Section 1506.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*
Chief Justice

4